DMP/AAS:CRH/JMH/EHS
F. #2017R00906

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

HU JI,
LI MINJUN,
TU LAN,
ZHU FENG,
   also known as "Johnny Zhu,"
KUANG ZEBIN,
   also known as "Vincent Kuang,"
MICHAEL MCMAHON,
ZHAI YONGQIANG,
ZHENG CONGYING and
ZHU YONG,
   also known as "Jason Zhu,"

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

1:21-cr-00265(PKC)(RER)

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 21-CR-265 (PKC) (S-1)
(T. 18, U.S.C., §§ 371, 951(a),
  981(a)(1)(C), 1512(c)(2), 1512(k),
  2261A(1)(B), 2 and 3551 et seq.;
  T. 21, U.S.C., § 853(p); T. 28, U.S.C.,
  § 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

     At all times relevant to this Superseding Indictment, unless otherwise indicated:

I.   The Defendants, Victims and Other Individuals

     1.    The defendant HU JI, a 46-year-old citizen and resident of the People's

Republic of China ("PRC"), was a policeman with the Wuhan Public Security Bureau in the

PRC.

     2.    The defendant LI MINJUN, a 65-year-old citizen and resident of the PRC,

was a physician, formerly of the Hubei Xiangyang Center Hospital, in Xiangyang, China.

3.     The defendant TU LAN, a 50-year-old citizen and resident of the PRC, was employed as a prosecutor with the Hanyang People's Procuratorate.

4.     The defendant ZHU FENG, also known as "Johnny Zhu," a 34-year-old PRC citizen and U.S. lawful permanent resident ("U.S. LPR"), was, until approximately April 2017, a resident of Queens, New York.

5.     The defendant KUANG ZEBIN, also known as "Vincent Kuang," a 23-year-old PRC citizen and U.S. LPR, resided in Brooklyn, New York.

6.     The defendant MICHAEL MCMAHON, a 53-year-old U.S. citizen, was a licensed private detective in New Jersey.

7.     The defendant ZHAI YONGQIANG, a 46-year-old PRC citizen, resided in the PRC and in California.

8.     The defendant ZHENG CONGYING, a 25-year-old PRC citizen and U.S. LPR, resided in Brooklyn, New York.

9.     The defendant ZHU YONG, also known as "Jason Zhu," a 64-year-old PRC citizen and a U.S. LPR, resided in Connecticut and Flushing, New York.

10.     PRC Official #1, an individual whose identity is known to the Grand Jury, was a PRC citizen and a Director of the Wuhan People's Procuratorate, Anti-Graft Bureau of Infringement, in Wuhan, PRC.

11.     PRC Official #2, an individual whose identity is known to the Grand Jury, was a PRC citizen and an officer with the Wuhan Jianghan District People's Procuratorate, in Wuhan, PRC.

12.     John Doe #1, an individual whose identity is known to the Grand Jury, was a PRC citizen who, since in or about 2010, resided in the United States.   He resided with

his spouse, Jane Doe #1, an individual whose identity is known to the Grand Jury, who was also a PRC citizen. Prior to coming to the United States, John Doe #1 was employed in the PRC as an official in a municipal government.

II.    The Criminal Scheme

A.    Overview

13.    Since at least September 2016, the defendants HU JI, LI MINJUN, TU LAN, ZHU FENG, also known as "Johnny Zhu," KUANG ZEBIN, also known as "Vincent Kuang," MICHAEL MCMAHON, ZHAI YONGQIANG, ZHENG CONGYING and ZHU YONG, also known as "Jason Zhu," together with other co-conspirators, participated in an international campaign to threaten, harass, surveil and intimidate John Doe #1, Jane Doe #1 and their adult daughter, Jane Doe #2, an individual whose identity is known to the Grand Jury. The goal of this campaign was to force John Doe #1 to return from the United States to the PRC against John Doe #1's will.

14.    This campaign against John Doe #1 was part of an international effort coordinated by the PRC government that was known as "Operation Fox Hunt" and "Operation Skynet." Operation Fox Hunt was a PRC Ministry of Public Security initiative to locate and repatriate alleged Chinese "fugitives" who had fled to foreign countries, including the United States. Because foreign countries like the PRC lacked lawful authority to conduct domestic law enforcement operations in the United States without the approval of the U.S. government, foreign law enforcement activity on U.S. soil typically relied upon coordination with the U.S. government. Instead of relying on that coordination, however, PRC government officials carrying out Operation Fox Hunt traveled to the United States and directed non-official operatives in the United States to, among other things, surveil and harass their intended targets. Once Operation Fox Hunt targets were located, the PRC government officials and those acting

4

on their behalf threatened the targets and their families with harm to coerce the targets to return to the PRC.

15.    In and around 2012 and 2014, the PRC government caused the International Criminal Police Organization (also known as "Interpol"), an inter-governmental law enforcement organization, to issue "red notices" for John Doe #1 and Jane Doe #1 (the "Red Notices").    According to the Red Notices, John Doe #1 was wanted by the PRC government for "embezzlement, abuse of power [and] acceptance of bribes," pursuant to Chinese Criminal Law Articles 383, 385 and 397, which carried a maximum possible penalty of death under PRC law. Jane Doe #1 was wanted by the PRC government for "accepting bribes," pursuant to Chinese Criminal Law Articles 383 and 388, which carried a maximum possible penalty of life imprisonment under PRC law.

16.    Between approximately 2016 and 2019, members of the PRC government, including, but not limited to, defendants HU JI and TU LAN, traveled to the United States and directed several individuals, including, but not limited to, the defendants LI MINJUN, ZHU FENG, KUANG ZEBIN, MICHAEL MCMAHON, ZHAI YONGQIANG, ZHENG CONGYING and ZHU YONG, to engage in unsanctioned and illegal conduct in the United States on behalf of the PRC for the purpose of coercing John Doe #1 to return to the PRC.

17.    As set forth below, the defendants sought to achieve this objective by pressuring John Doe #1 and his family members by imprisoning and threatening to imprison John Doe #1's family members in the PRC, transporting John Doe #1's elderly father to the

United States to convey threats to John Doe #1 and surveilling and harassing John Doe #1 and his family members, including his adult daughter, Jane Doe #2.

      B.    Stalking and Attempted Repatriation of John Doe #1

      18.    Beginning in approximately September 2016, the defendant ZHU YONG, together with a co-conspirator whose identity is known to the Grand Jury ("Co-Conspirator #1") and others, hired the defendant MICHAEL MCMAHON to investigate and surveil John Doe #1.

      19.    Shortly thereafter, the defendant MICHAEL MCMAHON began to investigate John Doe #1 and his family, including by conducting surveillance of John Doe #1 and obtaining John Doe #1's banking information. These activities were initially directed by the defendant ZHU YONG and later by the defendants HU JI and ZHU FENG. In the fall of 2016, MCMAHON sent HU JI information regarding John Doe #1 and his family. In or about November 2016, MCMAHON emailed HU JI and provided information about Jane Doe #1's international travel. Later, in or about December 2016, MCMAHON emailed HU JI information concerning Jane Doe #2's date of birth, Social Security number and banking information.

      20.    After multiple months of investigative work by the defendant MICHAEL MCMAHON, the co-conspirators planned a specific rendition operation to stalk and repatriate John Doe #1 through psychological coercion. The co-conspirators planned to bring John Doe #1's elderly father from the PRC to the United States in order to communicate a threat on behalf of the PRC government directly to John Doe #1 during this unannounced visit to the United States. Specifically, John Doe #1's father would convey to John Doe #1 that, should John Doe #1 not return to the PRC, John Doe #1's family in the PRC would suffer serious harm, including imprisonment. In furtherance of this criminal scheme, several co-conspirators traveled from the PRC to the United States, including the defendants ZHU FENG, TU LAN and LI MINJUN.

21.    On or about March 27, 2017, the defendant HU JI contacted the defendant MICHAEL MCMAHON and advised MCMAHON that John Doe #1's father was traveling from the PRC to the United States, asked MCMAHON (in English) to "trace" the father and locate John Doe #1's address and offered to pay MCMAHON in cash for his assistance.    MCMAHON accepted the offer.    HU JI later emailed MCMAHON two photographs, one of which depicted John Doe #1 and Jane Doe #1 while the other depicted John Doe #1's parents.

22.    The co-conspirators executed this scheme under the cloak of secrecy to avoid detection by U.S. law enforcement.    In communications with a co-conspirator in the United States ("Co-Conspirator #2"), an individual whose identity is known to the Grand Jury, the defendant ZHU FENG directed Co-Conspirator #2 to retrieve several "team members" at the airport and to limit his discussions with the group.[1]    ZHU FENG emphasized, "This thing is carried out secretly," and instructed Co-Conspirator #2 to "[j]ust follow the instructions when working for the Chinese government."

23.    In a further effort to ensure that the scheme remained covert, the co-conspirators instructed John Doe #1's father to lie to U.S. border officials upon entering the United States regarding the nature and purpose of his travel.    On or about April 1, 2017, the defendant ZHU FENG communicated with PRC Official #2 regarding false statements that were prepared for John Doe #1's father.    For example, ZHU FENG wrote, "Who is coming to the airport to pick you up?    Answer 'the tour guide arranged by family members.'    Tour guide who is assigned by my family[.]"    In actuality, John Doe #1's family did not assign a tour guide to retrieve John Doe #1's father at the airport; rather, ZHU FENG retrieved John Doe #1's father

---

[1] Unless otherwise indicated, all quoted communications described herein are verbatim translations of written Chinese or spoken Mandarin-Chinese.

at the airport.    Similarly, ZHU FENG wrote, "Who is paying the expenses of your trip (the lodging and tour costs)?" and "Have you all decided how to beat this questions[?]"    In response, PRC Official #2 wrote, "Self."    In actuality, the co-conspirators were paying for the costs to bring John Doe #1's father to the United States.

24.    In advance of John Doe #1's father's arrival in the United States, the defendants ZHU FENG and TU LAN flew from the PRC and landed at Newark Liberty International Airport on or about April 3, 2017.    On or about April 5, 2017, John Doe #1's father and the defendant LI MINJUN arrived at Newark Liberty International Airport on a flight from Shanghai, PRC.

25.    While in the United States, the defendant TU LAN met with the defendant ZHU FENG and Co-Conspirator #2 at a hotel in New Jersey.    During this meeting, TU LAN directed ZHU FENG and Co-Conspirator #2 to surveil a residence belonging to a relative of John Doe #1 using night vision goggles, in advance of the planned action to deliver John Doe #1's father to that location.    TU LAN also subsequently communicated with ZHU FENG while she was in the United States regarding the logistics of the operation, and advised ZHU FENG to return to the PRC "as soon as possible to avoid any risk."

26.    During the evening of April 5, 2017, certain co-conspirators brought John Doe #1's father to a house in New Jersey that belonged to Jane Doe #1's relatives.    At or about the same time, the defendant MICHAEL MCMAHON performed surveillance in the vicinity of the house belonging to Jane Doe #1's relatives to determine the present locations of members of John Doe #1's family, including John Doe #1, which at that time was unknown to the co-conspirators.

27.     The next day, on or about April 6, 2017, John Doe #1 met his father at a public location, before they returned together to John Doe #1's residence.    The defendant MICHAEL MCMAHON and other co-conspirators monitored the meeting of John Doe #1 and his father.    That same day, the defendant ZHU FENG requested that MCMAHON run a database check for a license plate number and an address associated with John Doe #1. MCMAHON provided that info.

28.     Subsequently, John Doe #1's father stayed with John Doe #1 for several days.    John Doe #1's father was tasked with conveying to John Doe #1 during this time that his family in the PRC would be harmed if John Doe #1 did not return to the PRC.

29.     On or about April 7, 2017, with the rendition operation in progress, the defendant TU LAN departed from John F. Kennedy International Airport, in Queens, New York on a flight to Beijing, PRC.    The next day, the defendant LI MINJUN departed from Newark Liberty International Airport on a flight to Beijing, PRC.    While in the PRC, TU LAN continued to direct the rendition operation.    On or about April 9, 2017, the defendant ZHU FENG messaged TU LAN and asked: "Prosecutor Tu [TU LAN], whose order should I take for now while I am here?"    TU LAN responded, "You communicate with me and Hu [HU JI].    I will go to the Commission for Discipline Inspection this afternoon.    I will contact you afterwards."    The "Commission for Discipline Inspection" referred to the PRC "Central Commission for Discipline Inspection," which was a PRC governmental agency responsible for investigating members of the Communist Party for corruption.

30.     On or about April 9, 2017, the defendant TU LAN wrote to the defendant ZHU FENG that the goal of the rendition operation was to repatriate John Doe #1 to the PRC:

The key is the status of [John Doe #1's father]. At the end of the day, need to take charge to bring him back, also need to ask him to

persuade [John Doe #1], so this time is not under control . . . . The second is to see if [John Doe #1's] father has made any effort, whether there is any opportunity to go and stay at [John Doe #1's] house, whether there is any chance to persuade [John Doe #1], to see if he has any chance to do any work, then decide based on his situation, since the main purpose is to let him persuade [John Doe #1] to surrender.

31.    The co-conspirators continued to track the location of John Doe #1's father while he was in the United States so that they could ensure his return to the PRC.    On April 9, 2017, the defendant TU LAN directed the defendant ZHU FENG to "[t]ell Mike [MCMAHON]" that "he still needs to help find where is [John Doe #1's] father, at [Jane Doe #1's sister's] place or at [John Doe #1's residence]."    TU LAN further wrote, "[Y]ou need to confirm that Mike [MCMAHON] can execute according to our requirement."

32.    On or about April 9, 2017, the defendant TU LAN sent an electronic message to the defendant ZHU FENG writing, "Did you tell Hu [HU JI] that I still want to confirm [John Doe #1's] father's status?"    ZHU FENG responded, "It seemed that he has reported to [PRC Official #1] already," and added that "I arranged to have mc [MCMAHON] to stay there Monday morning."    ZHU FENG told TU LAN that "the money I have on hand can only have mc [MCMAHON] to stay there for two days."

33.    On or about April 11, 2017, the defendants MICHAEL MCMAHON and ZHU FENG discussed (in English) additional steps to intimidate John Doe #1 into returning to the PRC.    MCMAHON specifically proposed they "harass" John Doe #1, including by "[p]ark[ing] outside his home and let him know we are there."    ZHU FENG responded that they "can't harass [John Doe #1] like that lol."

34.    The co-conspirators' efforts to persuade John Doe #1 to return to the PRC were unsuccessful.    On or about April 12, 2017, the defendant ZHU FENG and John Doe #1's father departed from Newark Liberty International Airport on a flight to Shanghai, PRC.

35.     Shortly before boarding the flight, the defendant ZHU FENG was interviewed by U.S. border and law enforcement officials.   During the interview, ZHU FENG identified a photograph of the defendant TU LAN and falsely stated, in sum and substance and relevant part, that TU LAN was a friend of his uncle; that he had been TU LAN's "tour guide" while she was in the United States; that he did not know anything about her job other than that she traveled frequently; and that TU LAN did not ask him to do anything in particular on the flight to the PRC that he was about to board.   U.S. border officials conducted an examination of ZHU FENG's luggage and discovered night vision goggles—a device used for surveillance at night or in low-light conditions—and associated accessories.   When questioned about that equipment, ZHU FENG stated, in sum and substance, that the goggles belonged to TU LAN and he was bringing them back to the PRC for TU LAN's use.

36.     Following the border interview, the defendant ZHU FENG directed Co-Conspirator #2 to obstruct justice and destroy potential evidence: "Delete all of our chat record after reading this [message].   There are some problems.   Someone in the U.S. will be looking for you."   ZHU FENG later added the following instructions: "The sooner the better"; "Delete all the chat record.   Delete [a messaging application].   You are just a tour guide."; and "Be careful of everything.   If there is anything, use other phones to call.   Your cell phone may be tracked."

37.     The defendant TU LAN provided the defendant ZHU FENG with instructions on how to handle John Doe #1's father's return to the PRC before ZHU FENG boarded the same return flight as John Doe #1's father.   TU LAN, who attributed the instructions to PRC Official #1, directed ZHU FENG to engage John Doe #1's father in conversation about his travel under a ruse, posing as "staff of a travel agency."   TU LAN added

warnings that ZHU FENG should maintain secrecy and operational security, including that ZHU

FENG should not use his own phone number to make any phone calls associated with John Doe

#1's father.    In the same series of messages, TU LAN instructed ZHU FENG to "hand [John

Doe #1's father] to" the defendant LI MINJUN when they returned to the PRC.

38.    During the flight, the defendant ZHU FENG reported to the defendant TU

LAN that his efforts to engage with John Doe #1's father had been unsuccessful: "[John Doe

#1's] father was very hostile to me and he was convinced that I was one of your people and

asked me again and again how I knew his location and travel plan, and talked to the flight

attendants repeatedly."    According to ZHU FENG, the flight attendants thereupon forbade ZHU

FENG from speaking with John Doe #1's father, and ZHU FENG expressed concern that "there

is informant on this flight."    TU LAN responded that ZHU FENG did not "need to take care of

him [John Doe #1's father]," that ZHU FENG should "delete all the chat content" and that ZHU

FENG should "leave by yourself."

39.    Approximately seven months later, the defendant ZHU FENG returned to

the United States from the PRC and participated in two voluntary interviews with law

enforcement agents on or about November 9, 2017 and November 10, 2017.    In sum and

substance and in relevant part, ZHU FENG admitted to his involvement in the plot to forcibly

render John Doe #1 to the PRC.    ZHU FENG admitted that (i) ZHU FENG was brought into the

conspiracy by the defendant HU JI, a person he knew to be a PRC official who had previously

repatriated a family member of ZHU FENG for the PRC government in 2015 or 2016; (ii) in and

around September 2016, HU JI tasked ZHU FENG with several activities related to the planning

and execution of the attempted repatriation of John Doe #1; (iii) in approximately December

2016, ZHU FENG met in person with HU JI, PRC Official #1 and the defendant TU LAN to

discuss the rendition scheme; and (iv) in April 2017, ZHU FENG traveled to the United States with TU LAN and participated in the scheme to coerce John Doe #1's return to the PRC.

    C.    <u>Harassment of Jane Doe #2</u>

        40.    The campaign against John Doe #1 at the behest of the PRC government included coordinated operations targeting John Doe #1's adult daughter, Jane Doe #2. The campaign included (i) a surveillance operation conducted against Jane Doe #2 from approximately May 2017 to July 2017, and (ii) an online harassment campaign against Jane Doe #2 from approximately April 2018 to July 2018 related to the allegations levied by the PRC against John Doe #1. The operations against Jane Doe #2 began shortly after the conclusion of the April 2017 failed attempt to render John Doe #1.

        41.    In or about May 2017, the defendant ZHAI YONGQIANG directed a co-conspirator based in the United States ("Co-Conspirator #3"), an individual whose identity is known to the Grand Jury, to hire a private investigator to locate Jane Doe #2. ZHAI YONGQIANG informed Co-Conspirator #3 that ZHAI YONGQIANG was trying to locate and obtain information about Jane Doe #2 and Jane Doe #2's parents (John Doe #1 and Jane Doe #1) on behalf of a leader from a prosecutor's office in the PRC. ZHAI YONGQIANG further indicated that Jane Doe #2 was the daughter of a person with a "red warrant," a reference to the Red Notices issued against both John Doe #1 and Jane Doe #1.

        42.    The defendant ZHAI YONGQIANG provided Co-Conspirator #3 with personal identification information belonging to Jane Doe #2, including her name, date of birth, Social Security number, known addresses and academic history. According to ZHAI YONGQIANG, if Co-Conspirator #3 were to locate Jane Doe #2, ZHAI YONGQIANG would receive a fee from a department in the PRC's prosecutor's office, which ZHAI YONGQIANG promised to split with Co-Conspirator #3.

43.     On or about and between May 15, 2017 and May 17, 2017, Co-Conspirator #3 contacted and hired a private investigator (the "PI") for the purpose of surveilling Jane Doe #2.    Co-Conspirator #3 provided the PI with a picture of a document from the defendant ZHAI YONGQIANG containing the name and personal identification information belonging to Jane Doe #2.

44.     On or about and between May 22, 2017 and May 27, 2017, Co-Conspirator #3 met with the PI and coordinated the planned surveillance activity against Jane Doe #2.    Co-Conspirator #3 directed the PI to, among other things, "make video of [Jane Doe #2]" and identify "the address she lives in."    In various communications, Co-Conspirator #3 also informed the PI, in sum and substance, that he was acting on behalf of the PRC government and that the ultimate target of these activities was Jane Doe #2's father, John Doe #1.

45.     In late 2017 or early 2018, the defendant ZHAI YONGQIANG traveled to the United States and met with Co-Conspirator #3 in California in connection with the PI's surveillance of Jane Doe #2.

46.     In addition to being the target of surveillance efforts, Jane Doe #2 was harassed via online communications from another conspirator ("Co-Conspirator #4"), an individual whose identity is known to the Grand Jury.    Specifically, in or about and between April 2018 and July 2018, Co-Conspirator #4 sent unsolicited and derogatory messages about Jane Doe #2 and her parents, John Doe #1 and Jane Doe #1, to Facebook "friends" of Jane Doe #2, as well as to Facebook friends of Jane Doe #2's spouse.

D.     Threats Against John Doe #1 and Jane Doe #1

47.     In or about September 2018, John Doe #1 and Jane Doe #1 were again harassed by members of the conspiracy, including the defendants ZHENG CONGYING and KUANG ZEBIN, among others.

48.    On or about September 4, 2018, the defendants ZHENG CONGYING and KUANG ZEBIN drove to the New Jersey residence of John Doe #1 and Jane Doe #1 and pounded on the front door.    ZHENG CONGYING and KUANG ZEBIN tried to force open the door to the residence, before instead accessing the back yard, entering a raised outdoor deck and peering into the windows of the residence.

49.    After these efforts, the defendants ZHENG CONGYING and KUANG ZEBIN left a handwritten note taped to the front door of the residence.    The note, written in simplified Chinese characters, threatened John Doe #1, "If you are willing to go back to the mainland and spend 10 years in prison, your wife and children will be all right.    That's the end of this matter!"

E.    Harassing Mailings to John Doe #1

50.    Beginning in or around February 2019, a relative of Jane Doe #1 who lives in the United States ("Jane Doe #3"), an individual whose identity is known to the Grand Jury, received several unsolicited packages.    The packages were from the PRC, purportedly from John Doe #1's sister in the PRC ("Jane Doe #4"), an individual whose identity is known to the Grand Jury, or Jane Doe #4's husband.    In or about and between July 2016 and April 2017, and between April 2017 and December 2018, Jane Doe #4 was imprisoned by PRC authorities as part of an effort to cause John Doe #1's coerced rendition to the PRC.

51.    On or about April 22, 2019, Jane Doe #3 received a package containing a CD with two "mp4" video files titled "30 Family Letters.mp4" and "A few words from [Jane Doe #4] to brother.mp4."

52.    The video file "30 Family Letters.mp4" contained a slide show of still photographs depicting John Doe #1's aged parents, among other family members.    Written Chinese text scrolled at the bottom of the video during the presentation.    The text, styled as a

letter from Jane Doe #4 to John Doe #1, exhorted John Doe #1 to "come home" to the PRC before his parents died.    Among other things, the written text stated that John Doe #1 had a "duty as a child" to his parents and that "[w]hen parents are alive, you can still call someplace a home; when parents are gone, you can only prepare for your own tomb."

53.    Several of the photographs in the video appeared to have been staged.    In one photograph, John Doe #1's father was seated next to a desk featuring a book that appeared to be PRC President Xi Jinping's "The Governance of China."

54.    The video file "A few words from [Jane Doe #4] to brother.mp4." contained a video of Jane Doe #4.    An individual appearing to be Jane Doe #4 spoke on the video and stated, in sum and substance and in part, that (i) she was released from PRC custody on November 8, 2018 after pleading guilty to a crime; (ii) John Doe #1's parents health was deteriorating, and they were suffering; (iii) she wanted John Doe #1 to return to the PRC; (iv) the PRC government was determined to fight against corruption; (v) John Doe #1 should accept responsibility and admit to unspecified crimes; and (vi) John Doe #1 should stop defying the PRC and come back in order to receive leniency.

III.    Lack of Notification to the Attorney General

55.    Database and records checks revealed that none of the defendants notified the Attorney General that they were acting as agents of a foreign government pursuant to Title 18, United States Code, Section 951.    Additionally, none of the defendants sought or received approval from U.S. government officials to travel to the United States for the purpose of seeking to repatriate John Doe #1 as described herein.

16

## COUNT ONE
(Conspiracy to Act as an Agent of a Foreign Government
Without Prior Notification to the Attorney General)

56.     The allegations contained in paragraphs one through 55 are realleged and

incorporated as if fully set forth in this paragraph.

57.     In or about and between September 2016 and December 2019, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants HU JI, LI MINJUN, TU LAN, ZHU FENG, also known as "Johnny Zhu," KUANG

ZEBIN, also known as "Vincent Kuang," MICHAEL MCMAHON, ZHAI YONGQIANG,

ZHENG CONGYING and ZHU YONG, also known as "Jason Zhu," together with others, did

knowingly and willfully conspire to act in the United States as agents of a foreign government, to

wit: the PRC government, without prior notification to the Attorney General of the United States,

as required by law, contrary to Title 18, United States Code, Section 951(a).

58.     In furtherance of the conspiracy and to effect its objects, within the

Eastern District of New York and elsewhere, the defendants HU JI, LI MINJUN, TU LAN, ZHU

FENG, also known as "Johnny Zhu," KUANG ZEBIN, also known as "Vincent Kuang,"

MICHAEL MCMAHON, ZHAI YONGQIANG, ZHENG CONGYING and ZHU YONG, also

known as "Jason Zhu," together with others, did commit and cause the commission of, among

others, the following:

## OVERT ACTS

(a)     On or about and between September 26, 2016 and October 5, 2016,

ZHU YONG retained MCMAHON to investigate and locate John Doe #1 and Jane Doe #1.

(b)     On or about October 20, 2016, HU JI traveled to the United States

from the PRC.

(c)      On or about October 27, 2016, HU JI, MCMAHON and ZHU YONG met at a restaurant in Paramus, New Jersey.

(d)      On or about and between November 12, 2016 and March 27, 2017, HU JI and MCMAHON communicated by email regarding the plan to render John Doe #1 and Jane Doe #1 to the PRC.

(e)      On or about April 1, 2017, ZHU FENG communicated with PRC Official #2 about making false statements to U.S. border enforcement officials to secure the entry of John Doe #1's father into the United States.

(f)      On or about April 3, 2017, ZHU FENG and TU LAN traveled to the United States from the PRC.

(g)      On or about April 5, 2017, LI MINJUN traveled to the United States from the PRC with John Doe #1's father.

(h)      On or about April 5, 2017 and April 6, 2017, MCMAHON performed surveillance of John Doe #1, Jane Doe #1 and their family, at the direction of the PRC government.

(i)      On or about April 9, 2017, TU LAN directed ZHU FENG to communicate with other co-conspirators about the ongoing scheme to coerce the repatriation of John Doe #1.

(j)      On or about April 12, 2017, ZHU FENG, at the direction of TU LAN, traveled with and supervised the return of John Doe #1's father from the United States to the PRC.

(k)     On or about May 17, 2017, ZHAI YONGQIANG sent Co-Conspirator #3 a document containing Jane Doe #2's name and personal identification information.

(l)     On or about September 4, 2018, ZHENG CONGYING and KUANG ZEBIN traveled to John Doe #1's residence in New Jersey and left a handwritten note demanding that John Doe #1 return to the PRC.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT TWO
(Acting as an Agent of a Foreign Government
Without Prior Notification to the Attorney General)

59.     The allegations contained in paragraphs one through 55 are realleged and incorporated as if fully set forth in this paragraph.

60.     In or about and between September 2016 and December 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HU JI, LI MINJUN, TU LAN, ZHU FENG, also known as "Johnny Zhu," KUANG ZEBIN, also known as "Vincent Kuang," MICHAEL MCMAHON, ZHAI YONGQIANG, ZHENG CONGYING and ZHU YONG, also known as "Jason Zhu," together with others, did knowingly act in the United States as agents of a foreign government, to wit: the PRC government, without prior notification to the Attorney General of the United States, as required by law.

(Title 18, United States Code, Sections 951(a), 2 and 3551 et seq.)

COUNT THREE
(Conspiracy to Engage in Interstate Stalking)

61.    The allegations contained in paragraphs one through 55 are realleged and incorporated as if fully set forth in this paragraph.

62.    In or about and between September 2016 and December 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants HU JI, LI MINJUN, TU LAN, ZHU FENG, also known as "Johnny Zhu," KUANG ZEBIN, also known as "Vincent Kuang," MICHAEL MCMAHON, ZHAI YONGQIANG, ZHENG CONGYING and ZHU YONG, also known as "Jason Zhu," together with others, did knowingly and willfully conspire to travel in interstate and foreign commerce, with the intent to harass and intimidate, and place under surveillance with the intent to harass and intimidate, one or more persons, to wit: John Doe #1, Jane Doe #1 and Jane Doe #2, and in the course of, and as a result of, such travel, to engage in conduct that would cause, would attempt to cause and would be reasonably expected to cause John Doe #1, Jane Doe #1 and Jane Doe #2 substantial emotional distress, contrary to Title 18, United States Code, Section 2261A(1)(B).

63.    In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants HU JI, LI MINJUN, TU LAN, ZHU FENG, also known as "Johnny Zhu," KUANG ZEBIN, also known as "Vincent Kuang," MICHAEL MCMAHON, ZHAI YONGQIANG, ZHENG CONGYING and ZHU YONG, also known as "Jason Zhu," together with others, did commit and cause the commission of, among others, the following:

OVERT ACTS

(a)    On or about and between September 26, 2016 and October 5, 2016, ZHU YONG retained MCMAHON to investigate and locate John Doe #1 and Jane Doe #1.

(b)      On or about and between November 12, 2016 and March 27, 2017, HU JI and MCMAHON communicated by email regarding the plan to render John Doe #1 and Jane Doe #1 to the PRC.

(c)      On or about April 5, 2017, TU LAN, LI MINJUN, ZHU FENG and others brought John Doe #1's father to a residence in New Jersey belonging to a relative of John Doe #1 and directed John Doe #1's father to attempt to compel John Doe #1 to travel to the PRC against his will.

(d)      On or about April 11, 2017, MCMAHON proposed to ZHU FENG to harass John Doe #1 by parking outside of John Doe #1's residence and "let[ting] him know we are there."

(e)      On or about May 17, 2017, ZHAI YONGQIANG sent Co-Conspirator #3 a document containing Jane Doe #2's name and personal identification information.

(f)      On or about May 22, 2017, Co-Conspirator #3 directed the PI to locate and conduct surveillance of Jane Doe #2.

(g)      Between approximately April 2018 and July 2018, Co-Conspirator #4 sent unsolicited and derogatory messages about Jane Doe #2 and Jane Doe #2's family members to associates of Jane Doe #2.

(h)      On or about September 4, 2018, ZHENG CONGYING and KUANG ZEBIN traveled to John Doe #1's residence in New Jersey and left a handwritten note demanding that John Doe #1 return to the PRC.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT FOUR
(Stalking)

64.      The allegations contained in paragraphs one through 55 are realleged and
incorporated as if fully set forth in this paragraph.

65.      In or about and between September 2016 and December 2019, both dates
being approximate and inclusive, within the Eastern District of New York and elsewhere, the
defendants HU JI, LI MINJUN, TU LAN, ZHU FENG, also known as "Johnny Zhu," KUANG
ZEBIN, also known as "Vincent Kuang," MICHAEL MCMAHON, ZHENG CONGYING and
ZHU YONG, also known as "Jason Zhu," together with others, did knowingly and intentionally
travel in interstate and foreign commerce, with the intent to harass and intimidate, and place
under surveillance with the intent to harass and intimidate one or more persons, to wit: John Doe
#1 and Jane Doe #1, and in the course of, and as a result of, such travel, engaged in conduct that
caused, attempted to cause and would be reasonably expected to cause John Doe #1 and Jane
Doe #1 substantial emotional distress.

(Title 18, United States Code, Sections 2261A(1)(B), 2 and 3551 et seq.)

## COUNT FIVE
(Obstruction of Justice)

66.      The allegations contained in paragraphs one through 55 are realleged and
incorporated as if fully set forth in this paragraph.

67.      In or about April 2017, within the Eastern District of New York and
elsewhere, the defendants TU LAN and ZHU FENG, also known as "Johnny Zhu," together with
others, did knowingly, intentionally and corruptly obstruct, influence and impede, and attempt to

obstruct, influence and impede, an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

## COUNT SIX
(Conspiracy to Obstruct Justice)

68.     The allegations contained in paragraphs one through 55 are realleged and incorporated as if fully set forth in this paragraph.

69.     In or about April 2017, within the Eastern District of New York and elsewhere, the defendants TU LAN and ZHU FENG, also known as "Johnny Zhu," together with others, did knowingly, intentionally and corruptly conspire to obstruct, influence and impede an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York, contrary to Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATIONS
AS TO COUNTS FIVE AND SIX

70.     The United States hereby gives notice to the defendants TU LAN and ZHU FENG, also known as "Johnny Zhu," that, upon their conviction of either of the offenses charged in Counts Five and Six, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

71.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants TU LAN and ZHU FENG, also known as "Johnny Zhu":

(a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants TU LAN and ZHU FENG, also known as

"Johnny Zhu," up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code,

Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
JACQUELYN M. KASULIS
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2017R00906
FORM DBD-34
JUN. 85

No. 21-CR-265 (PKC) (S-1)

## UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*HU JI, LI MINJUN, TU LAN, ZHU FENG, also known as "Johnny Zhu,"
KUANG ZEBIN, also known as "Vincent Kuang," MICHAEL
MCMAHON, ZHAI YONGQIANG, ZHENG CONGYING and ZHU
YONG, also known as "Jason Zhu,"*

Defendants.

## SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 371, 951(a), 981(a)(1)(C), 1512(c)(2), 1512(k),
2261A(1)(B), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _

**Craig R. Heeren, J. Matthew Haggans, Ellen H. Sise,**
*Assistant U.S. Attorneys (718) 254-7000*