DMP:CRH/JMH/EHS
F. #2017R00906

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

–  –  –  –  –  –  –  –  –  –  –  –X

UNITED STATES OF AMERICA

    - against -                         No. 21-CR-265 (PKC)

HU JI,
LI MINJUN,
TU LAN,
ZHU FENG,
        also known as "Johnny Zhu,"
KUANG ZEBIN,
MICHAEL MCMAHON,
ZHAI YONGQIANG,
ZHENG CONGYING and
ZHU YONG,
        also known as "Jason Zhu,"

                  Defendants.

–  –  –  –  –  –  –  –  –  –  –  –X

## THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MICHAEL MCMAHON'S MOTION TO DISMISS

                                  BREON PEACE
                                  United States Attorney
                                  Eastern District of New York

Craig R. Heeren
J. Matthew Haggans
Ellen H. Sise
Assistant United States Attorneys

Scott A. Claffee
Trial Attorney
National Security Division
Special Assistant United States Attorney
(Of Counsel)

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL POSTURE.................................... 2

   I.   Operation Fox Hunt and Targeting of the Victims by the PRC Government................ 2

   II.   April 2017 Stalking and Attempted Repatriation Operation ........................................ 3

   III.   Harassment of the Victims' Daughter ......................................................................... 7

   IV.   September 2018 Threats by Zheng Congying and Kuang Zebin .................................. 7

   V.   Harassing Mailings to John Doe #1 ........................................................................... 8

   VI.   Lack of Notification to the Attorney General by Foreign Agents ............................... 9

   VII.   The Defendants' Arrests and Charges.......................................................................... 9

ARGUMENT ............................................................................................................... 10

   I.   The Superseding Indictment Adequately States Each of the Offenses Against McMahon10

     A.   Legal Standard .................................................................................................. 10

     B.   The Indictment Sufficiently Alleges That McMahon Has Committed Interstate Stalking (Count Four)..................................................................................... 10

     C.   The Indictment Sufficiently Alleges That McMahon Acted as An Agent of a Foreign Government Without Prior Notice to the Attorney General (Count Two)............... 16

     D.   The Indictment Sufficiently Alleges That McMahon Engaged in a Conspiracy to Stalk the Victims and Act as an Unlawful PRC Agent............................................ 19

   II.   The Superseding Indictment Adequately Alleges Venue for Each Offense................ 20

     A.   Legal Standard.................................................................................................. 20

     B.   The Superseding Indictment Alleges Venue with Regard to McMahon ................. 21

CONCLUSION............................................................................................................. 24

TABLE OF AUTHORITIES

Page

CASES

Pinkerton v. United States,
    328 U.S. 640 (1946)....................................................................................13, 14, 16, 18

United States v. Alfonso,
    143 F.3d 772 (2d Cir. 1998)..............................................................................10, 12, 22

United States v. Aliperti,
    867 F. Supp. 142 (E.D.N.Y. 1994)................................................................................ 10

United States v. Augustine,
    No. 18-CR-393 (SJ), 2021 WL 1381060 (E.D.N.Y. Apr. 13, 2021) ................................... 17

United States v. Bellomo,
    263 F. Supp. 2d 561 (E.D.N.Y. 2003)...................................................................... 21, 22

United States v. Bronson,
    No. 05 Cr. 714 (NGG), 2007 WL 2455138 (E.D.N.Y. Aug. 23, 2007).............................. 21

United States v. Citron,
    783 F.2d 307 (2d Cir. 1986)..................................................................................... 10

United States v. Cooper,
    No. 17-CR-296 (PKC), 2020 WL 2307646 (E.D.N.Y., 2020) ....................................... 12

United States v. Courtois,
    No. S81 CR. 53-CSH, 1981 WL 1639 (S.D.N.Y. June 5, 1981)....................................... 20

United States v. Dumeisi,
    424 F.3d 566 (7th Cir. 2005)..................................................................................... 16

United States v. Hill,
    279 Fed. App'x 90 (2d Cir. 2008).......................................................................... 14, 18

United States v. Khalupsky,
    5 F.4th 279 (2d Cir. 2021)....................................................................................... 23

United States v. Kirk Tang Yuk,
    885 F.3d 57 (2d Cir. 2018)....................................................................................... 21

United States v. Lange,
    No. 10-CR-968 (DLI), 2012 WL 511448 (E.D.N.Y. Feb. 15, 2012)................................... 22

United States v. Lange,
    834 F.3d 58 (2d Cir. 2016) ................................................................................ 23

United States v. LaSpina,
    299 F.3d 165 (2d Cir. 2002) .............................................................................. 19

United States v. Lubienecki,
    No. 20-CR-77A, 2020 WL 7248323 (W.D.N.Y. Oct. 20, 2020), report and recommendation
    adopted, No. 20-CR-77-A, 2020 WL 7239872 (W.D.N.Y. Dec. 9, 2020) ......................... 12

United States v. Miley,
    513 F.2d 1191 (2d Cir. 1975) ............................................................................ 15

United States v. Mucciante,
    21 F.3d 1228 (2d Cir. 1994) .............................................................................. 14

United States v. Naranjo,
    14 F.3d 145 (2d Cir. 1994) ................................................................................ 21

United States v. Nyenekor,
    784 Fed. App'x 810 (2d Cir. 2019) ...................................................................... 14

United States v. Ohle,
    678 F. Supp. 2d 215 (S.D.N.Y. 2010) .................................................................. 21

United States v. Parkes,
    497 F.3d 220 (2d Cir. 2007) .............................................................................. 14

United States v. Pugh,
    No. 15-CR-116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ........................... 17

United States v. Rafiekian,
    991 F.3d 529 (4th Cir. 2021) ............................................................................. 16

United States v. Rasheed,
    No. 18-3479, --- F.3d ---, 2020 WL 6930781(2d Cir. Nov. 25, 2020) ........................... 21

United States v. Rodriguez,
    320 F. App'x 105 (2d Cir. 2009) ........................................................................ 15

United States v. Rommy,
    506 F.3d 108 (2d Cir. 2007) .............................................................................. 21

United States v. Royer,
    549 F.3d 886 (2d Cir. 2008) .............................................................................. 21

United States v. Sampson,
    898 F.3d 270 (2d Cir. 2018) ........................................................................ 12

United States v. Stringer,
    730 F.3d 120 (2d Cir. 2013) ................................................................... 10, 11

United States v. Walsh,
    194 F.3d 37 (2d Cir. 1999) .......................................................................... 10

## STATUTES

U.S. Const. art. III, § 2, cl. 3; amend. VI ..................................................... 20

18 U.S.C. § 2 ............................................................................................. 14, 15

18 U.S.C. § 2261A(1) ....................................................................................... 11

18 U.S.C. § 2261A(1)(B) .............................................................................. 9, 13

18 U.S.C. § 3237(a) ......................................................................................... 21

18 U.S.C. § 371 ................................................................................................. 9

18 U.S.C. § 951 ..................................................................................... 9, 16, 17

18 U.S.C. § 1512(c)(2) ...................................................................................... 9

18 U.S.C. § 1512(k) ........................................................................................... 9

## OTHER AUTHORITIES

Instruction 63-15, Sand, Modern Federal Jury Instructions ............................ 11

## RULES

Federal Rule of Criminal Procedure 7(c) ......................................................... 10

Federal Rule of Criminal Procedure 18 ............................................................ 20

PRELIMINARY STATEMENT

Defendant Michael McMahon ("McMahon") is charged in a Superseding Indictment, together with several other co-defendants, with acting as unlawful agents of the People's Republic of China (the "PRC"), interstate stalking, and conspiracy to commit both offenses.   The charges arise out of a scheme by McMahon and several coconspirators to harass and coerce two U.S. residents, John Doe #1 and Jane Doe #1 (the "Victims") to return to the PRC as part of the PRC government's "Operation Fox Hunt" campaign.   McMahon was hired to investigate and surveil the Victims, helping to carry out a sophisticated international operation whereby PRC officials brought an elderly relative from the PRC to the United States in an attempt to coerce the Victims' return.   As the charging documents allege, McMahon knew that the Victims were targets of the PRC government, knew that the goal of the campaign was to force the Victims to repatriate to the PRC, and McMahon himself proposed to another conspirator that they "harass" the Victims to achieve these ends.   When McMahon's part of the scheme failed to sufficiently coerce the Victims to travel, other conspirators ratcheted up the pressure, harassing the Victims' daughter and leaving threatening notes that referenced harm to family members.

McMahon now moves to dismiss the Superseding Indictment, arguing that the charges against him fail to state an offense, and that the government lacks venue to proceed.   But it is blackletter law that an indictment need only identify the essential elements, track the statutory language, and provide adequate notice to the defendant.   The Superseding Indictment does all of these things.   Indeed, the twenty-five pages of factual allegations in the Superseding Indictment provide far more than is required to state an offense.   McMahon's arguments are without merit and the motion should be denied.

1

<u>FACTUAL BACKGROUND AND PROCEDURAL POSTURE</u>

The defendants, including McMahon, engaged in an international campaign to threaten, harass, surveil, and intimidate U.S. residents John Doe #1 and Jane Doe #1 (together the "Victims").  (SI ¶ 13-17)[1].  The conspiracy was part of the PRC government's international efforts in support of "Operation Fox Hunt," a PRC campaign to target ethnically Chinese individuals living in foreign countries for coerced repatriation.   The scheme was carried out in, among other places, the PRC, New Jersey, and New York.   As a result of their conduct, McMahon and several coconspirators were charged in 2021 with unlawfully acting as foreign agents of the PRC government, stalking, and conspiracy to commit both offenses; two defendants were also charged with obstruction of justice and conspiracy to do the same.

I.   <u>Operation Fox Hunt and Targeting of the Victims by the PRC Government</u>

As alleged in the Superseding Indictment, the PRC government is engaged in a worldwide initiative to forcibly repatriate PRC citizens living in the United States and other countries who are wanted in the PRC for allegedly committing various crimes. This initiative has been identified by the PRC government as "Operation Fox Hunt" and "Operation Skynet," and described by the PRC as part of a larger anti-corruption effort.   To advance these efforts, the PRC government has engaged in unsanctioned, unilateral, and illegal practices, including coercion, extortion, and intimidation, all directed at these "fugitive" targets and their families, to compel cooperation or self-repatriation to the PRC. (<u>See</u> SI ¶ 14).

John Doe #1 and Jane Doe #1 were both targets of Operation Fox Hunt.   On or about July 5, 2012 and December 9, 2014, the PRC government caused the International Criminal Police Organization (also known as "Interpol'"), an inter-governmental organization, to issue "red

---

[1]      Unless otherwise indicated, the facts described below are taken from the Superseding Indictment.

notices" for John Doe #1 and Jane Doe #1 (the "Red Notices").   According to the Red Notices, John Doe #1 is wanted by the PRC government for "embezzlement, abuse of power [and] acceptance of bribes," pursuant to Chinese Criminal Law Articles 383, 385, and 397, which carry a maximum possible penalty of death.   Jane Doe #1 is wanted by the PRC government for "accepting bribes,'' pursuant to Chinese Criminal Law Articles 383 and 388, which carry a maximum possible penalty of life imprisonment.

II.     <u>April 2017 Stalking and Attempted Repatriation Operation</u>

Between approximately September 2016 and April 2017, several co-conspirators stalked John Doe #1 and Jane Doe #1 at the behest of the PRC government.   To coerce the Victims to travel to the PRC against their will, the co-conspirators forced John Doe #1's elderly father, John Doe #2, to come to the United States to instruct John Doe #1 to return to the PRC, lest John Doe #1's family members be harmed.   (SI ¶¶ 18-39).

McMahon was an integral part of the scheme.   He was first hired to investigate the Victims in approximately September 2016 by Jason Zhu, a co-defendant with a residence in Flushing, New York.   (SI ¶ 9).   Zhu, with the help of another individual, retained McMahon, and directed him to investigate and surveil the Victims.   (SI ¶¶ 18-19, 58(a)).   Although hired indirectly, McMahon had reason to know from the beginning of his retention that John Doe #1 was, in fact, wanted by the PRC government.   On or about October 5, 2016, McMahon sent an email to another individual who worked with him as a private investigator; the subject line read "tlo report says wanted by interpole [sic]."   The attachment to the email provided criminal history information about John Doe #1, which stated that he was "Interpol Most Wanted."   (Compl. ¶ 25).   Nevertheless, over the course of October 2016, McMahon accepted his tasking, and provided information about the Victims to his co-conspirators, including surveillance photographs, banking information, and private personal data such as dates of birth and Social Security numbers.   (SI ¶

19).   McMahon worked with both Jason Zhu and, later, directly with PRC official and co-defendant Hu Ji, who traveled to the United States from the PRC for this operation.   (Id.)   On or about October 27, 2016, McMahon met Jason Zhu and PRC Official Hu Ji in person at a restaurant in Paramus, New Jersey.   (SI ¶ 58(b) and (c)).

After multiple months of investigative work by McMahon, the conspirators planned an operation to stalk and repatriate the Victims through the coercive use of John Doe #1's elderly father, John Doe #2.   (SI ¶ 20).   In or around late March 2017, Hu Ji emailed McMahon and told him that John Doe #2 (John Doe #1's father) was coming from the PRC to the United States, and requested that McMahon "trace" the elderly man they were bringing into the country.   (SI ¶¶ 21, 58(d)).   Hu Ji also sent McMahon photographs of the Victims, as well as of John Doe #2 and his spouse.   (Id.).

Around the same time, other co-conspirators were traveling to New Jersey to facilitate the scheme.   Co-defendant Zhu Feng, a Queens resident at that time (SI ¶ 4), contacted Hongru Jin, another Queens resident (Compl. ¶ 14(d)), and directed Jin to travel and pick up several "team members" from the airport.   (SI ¶ 22).   Zhu specifically told a co-conspirator that they were working for the PRC government.   (Id.)   Zhu Feng also helped prepare false information to help ensure that John Doe #2 would be permitted to enter the United States when he traveled.   (SI ¶¶ 23, 58(e)).   On or about April 3, 2017, Zhu Feng and co-defendant Tu Lan flew from the PRC and landed at Newark International Airport and, on or about April 5, 2017, John Doe #2 was brought to New Jersey from the PRC by co-defendant Li Minjun, and also landed at Newark International Airport.   (SI ¶¶ 24, 58(f), (g)).   After landing in the United States, PRC Official Tu Lan met with Zhu Feng and another conspirator (both of whom at the time resided in

the Eastern District of New York) at a hotel in New Jersey, and strategized about how to carry out the operation.  (SI ¶ 25).

On or about April 5, 2017, John Doe #2 arrived at a house in New Jersey that belonged to Jane Doe #1's relatives.  Shortly thereafter, Jane Doe #1 and John Doe #1 were notified of John Doe #2's arrival.  At the same time, McMahon, and other co-conspirators were conducting surveillance in front of the residence where John Doe #2 was brought.  (SI ¶ 26).  The next day, John Doe #1 met his father at a public location, and they returned together to John Doe #1's residence.  That same day, McMahon obtained records about John Doe #1 from a government database at the request of Zhu Feng, and contrary to regulations for the use of that database.  (SI ¶ 27; Compl. ¶¶ 68-70).  John Doe #2 then stayed with his son for several days. During this time, John Doe #2 conveyed to John Doe #1 the harm that would befall his family if John Doe #1 did not return to the PRC.  (SI ¶ 28).

During this time, McMahon and other co-conspirators continued to surveil John Doe #2 and the Victims.  (SI ¶ 31).  As a result of their continued surveillance, the conspirators were able to learn John Doe #1's address, which was not publicly listed or previously known to the co-conspirators.  Notably, while conducting surveillance, McMahon again showed that he knew he was working for the PRC government, emailing himself a link to an English-language website that discussed the PRC's "Global Dragnet," the PRC's issuance of red notices, and which specifically identified the Victims as two of the targets of this campaign.  (Compl. ¶ 53).

On or about April 7, 2017, PRC official Tu Lan departed from John F. Kennedy International Airport, in Queens, New York ("JFK Airport") on a flight to Beijing, PRC and, on or about April 8, 2017, Li Minjun departed from Newark Airport on a flight to Beijing, PRC.  (SI ¶ 29).  McMahon continued to take directions from his co-conspirators, including the PRC official

5

who returned to the PRC from the Eastern District of New York.   (SI ¶ 58(i)).   For example, on or about April 9, 2017, Tu Lan directed Zhu Feng to "[t]ell Mike" (referring to McMahon) that "he still needs to help find where is [John Doe #1's] father, at [Jane Doe #1's sister's] place or at [John Doe #1's actual residence]?"  (SI ¶ 31).   Tu Lan then messaged Zhu Feng and wrote that "you need to confirm that Mike can execute according to our requirement."  (Id.).

On or about April 11, 2017, McMahon and Zhu Feng discussed additional steps to take targeting John Doe #1, including more aggressive harassment.   Feng stated, "I have to go to China [tomorrow] morning for the meeting.   I will let you know what's the next plan." McMahon responded, "I think if we harass [John Doe #1].   Park outside his home and let him know we are there.   I did that before on another case."   Feng responded, "We can't harass [John Doe #1] like that lol."  (SI ¶¶ 33, 63(d)).

The efforts to persuade John Doe #1 to return to the PRC were ultimately unsuccessful at that time.   (SI ¶ 34).

Following the April 2017 harassment and repatriation activity, several co-conspirators took steps to obstruct investigation of their criminal conduct.   For example, on or about April 12, 2017, Zhu Feng was interviewed by U.S. border and law enforcement officials at Newark Airport about, among other things, his recent activities in the United States.   During the interview, Zhu Feng identified a photograph of Tu Lan and made several false statements about his knowledge of and relationship to Tu Lan.  (SI ¶ 35).   After the interview, Zhu Feng texted Hongru Jin, directed him to delete their communications because "someone in the U.S. will be looking for you," and directed him to say that he was "just a tour guide."  (SI ¶ 36).   On or about April 12, 2017, after being told that John Doe #2 had grown suspicious of Zhu Feng's role in the

scheme, Tu Lan directed Zhu Feng to "delete all the chat content," and that he should "leave by yourself." (SI ¶¶ 37-38).

III.    Harassment of the Victims' Daughter

In addition to the actions taken in and around April 2017 by McMahon and others, the PRC-directed campaign also included operations targeting the Victims' adult daughter, Jane Doe #2. The continuing campaign included (1) a surveillance operation conducted against Jane Doe #2 from approximately May 2017 to July 2017, and (2) an online harassment campaign against Jane Doe #2 related to the allegations levied by the PRC against the Victims. A more detailed summary of the factual allegations related to this portion of the scheme can be found in the Superseding Indictment and Complaint. (See SI ¶¶ 40-46; Compl. ¶¶ 80-108).

IV.    September 2018 Threats by Zheng Congying and Kuang Zebin

The Victims were again harassed in September 2018 by individuals attempting to coerce their return to the PRC. Specifically, John Doe #1 and Jane Doe #1 were threatened by co-defendants Zheng Congying and Kuang Zebin.

On or about the afternoon of September 4, 2018, Zheng Congying and Kuang Zebin drove a white sedan to the Victims' residence, parked and walked up to the house, and knocked aggressively on the front door. Zheng Congying and Kuang Zebin tried to open the door to the residence, then proceeded to walk to the back yard, entered a raised outdoor deck and appeared to look into the windows of the residence. The two men ultimately left a note taped to the front door of the Victims' residence. The note, which was written in simplified Chinese characters, states when translated: "If you are willing to go back to the mainland and spend 10 years in prison, your wife and children will be all right. That's the end of this matter!" Surveillance video reflects that one of the two men appears to discard paper during these events, which was later recovered and revealed to be two additional drafts of the threatening note taped to the door, containing the

same substantive message.   For example, one stated "If you are willing to go back to the mainland and spend 10 years in prison, your wife and children will be safe and all right.   That's the end of this matter!"   (See SI ¶¶ 47-49).   Notably, both Zheng and Kuang were residing in Brooklyn at the time they traveled to New Jersey to engage in this harassment.   (SI ¶¶ 5, 8).

V.       Harassing Mailings to John Doe #1

The attempts to coerce John Doe #1's repatriation continued into 2019, in the form of harassing mailings.   Beginning in or around February 2019, a relative of Jane Doe #1 that lives in the United States ("Jane Doe #3") received several unsolicited packages.   The packages were all from the PRC, typically purporting to be from John Doe #1's sister in the PRC, Jane Doe #4, or Jane Doe #4's husband.   Jane Doe #4 was imprisoned by the PRC government for a period of time as part of the effort to coerce the Victim's return to the PRC.   (SI ¶ 50).

On or about April 22, 2019, Jane Doe #1's relative received a package containing a CD with two "mp4" video files.   (SI ¶ 51).   One video, whose title reads "30 Family Letters.mp4" when translated, contained a "slide show" of still photographs of John Doe #1's elderly mother and father (John Doe #2), as well as other family members.   (SI ¶ 52).   Written text scrolling in the video, which was styled as a letter from Jane Doe #4, exhorts John Doe #1 to "come home" to the PRC before his parents died.   Among other things, the written text states that John Doe #1 had a "duty as a child" to his parents; that "[w]hen parents are alive, you can still call someplace a home; when parents are gone, you can only prepare for your own tomb."   (Id.).

The video file "A few words from [Jane Doe #3] to brother.mp4." contains a video of Jane Doe #4.   An individual appearing to be Jane Doe #4 spoke on the video and stated, in sum and substance and in part, that (i) she was released from PRC custody on November 8, 2018 after pleading guilty to a crime; (ii) the health of both of John Doe #1's parents was deteriorating, and they were suffering; (iii) she wanted John Doe #1 to return to the PRC; (iv) the PRC government

was determined to fight against corruption; (v) John Doe #1 should accept responsibility and admit to unspecified crimes; and (vi) John Doe #1 should stop defying the PRC and come back in order to receive leniency.   (SI ¶ 54).

VI.     Lack of Notification to the Attorney General by Foreign Agents

Database and physical records checks revealed that none of the defendants notified the Attorney General that they were or are acting as agents of the People's Republic of China pursuant to Title 18, United States Code, Section 951.   (SI ¶ 55).

VII.    The Defendants' Arrests and Charges

On October 27, 2020, McMahon was charged by complaint, along with Zhu Feng, Hu Ji, Li Minjun, Hongru Jin, Zhu Yong, Rong Jing, and Zheng Congying with conspiracy to act as an illegal agent of a foreign government and stalking conspiracy, both in violation of 18 U.S.C. § 371.   (ECF No. 1).   On May 12, 2021, McMahon, Zhu Feng, Hu Ji, Li Minjun, Zhu Yong, and Zheng Congying were indicted for the same offenses.   (ECF No. 54).   On July 21, 2021, McMahon, Zhu Feng, Hu Ji, Li Minjun, Tu Lan, Zhu Yong, Zheng Congying, Kuang Zebin, and Zhai Yongqiang were charged in the operative Superseding Indictment by a Grand Jury sitting in the Eastern District of New York with: conspiracy to act as an agent of a foreign government without prior notification to the Attorney General, in violation of 18 U.S.C. § 371 (Count One); acting as an agent of a foreign government without prior notification to the Attorney General, in violation of 18 U.S.C. § 951 (Count Two); conspiracy to engage in interstate stalking, in violation of 18 U.S.C. § 371 (Count Three); and stalking, in violation of 18 U.S.C. § 2261A(1)(B) (Count Four).[2]

---

[2]       Defendants Tu Lan and Zhu Feng were also charged with obstruction of justice and conspiracy to do the same, in violation of 18 U.S.C. §§ 1512(c)(2) and 1512(k) (Counts Five and Six).

ARGUMENT

I.      The Superseding Indictment Adequately States Each of the Offenses Against McMahon

    A.      Legal Standard

        Under Federal Rule of Criminal Procedure 7(c), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."   It is well established that an indictment need not include all of the government's evidence, and it "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."   United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998).   Where an indictment does so, it is sufficiently specific to withstand a motion to dismiss.   See United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) ("When the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, this court has 'repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity.'") (internal citations omitted); see also United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999) (affirming conviction where defendant argued that indictment was insufficient because the time periods of the counts of the indictment overlapped); United States v. Citron, 783 F.2d 307, 314 (2d Cir. 1986) (affirming conviction where challenged indictment did not allege precise amounts of unreported income); United States v. Aliperti, 867 F. Supp. 142, (E.D.N.Y. 1994) (holding that where the indictment tracked the statute, the government was not required to separately allege a quid pro quo under 18 U.S.C. § 1951).

    B.      The Indictment Sufficiently Alleges That McMahon Has Committed Interstate Stalking (Count Four)

        1.      The Superseding Indictment Alleges the Elements of Interstate Stalking

        McMahon moves to dismiss Count Four of the indictment, interstate stalking, because the Superseding Indictment has "key missing factual elements."   (Mot. at 5.)

10

Specifically, McMahon argues that the Superseding Indictment does not allege that McMahon "travel[ed] in interstate or foreign commerce" because "the surveillance conducted by Mr. McMahon as described in the Superseding Indictment occurred exclusively in New Jersey." (Id. at 5-6.)   He also seeks dismissal of Count Four because the "Superseding Indictment fails to allege at any point that the subjects of Mr. McMahon's investigation were even aware that Mr. McMahon was conducting surveillance" and therefore, McMahon "could not have caused the distress required by the statute to a subject who did not know what he was doing."   (Id. at 7.)

As noted above, an indictment need only state the elements of the offense and make the defendant aware of what the charges are against him.   See, e.g., Stringer, 730 F.3d at 124. The elements of interstate stalking are: (1) travel in interstate or foreign commerce; (2) with the intent to kill, injure, harass or intimidate, or place under surveillance with the intent to do the same; and (3) in the course of, or as a result of, such travel, engaged in conduct as a result of which the victim was placed in reasonable fear of death or serious injury, or caused substantial emotional distress to himself or a member of his immediate family or his spouse or intimate partner.   See 18 U.S.C. § 2261A(1); Instruction 63-15, Sand, Modern Federal Jury Instructions.   The third element of the offense is also satisfied if the defendant attempted to cause, or his conduct would reasonably be expected to cause, substantial emotional distress to the victim or his family.   Id. The Superseding Indictment alleges these elements:

> In or about and between September 2016 and December 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere . . . McMahon . . . together with others, did knowingly and intentionally travel in interstate and foreign commerce, with the intent to harass and intimidate, and place under surveillance with the intent to harass and intimidated one or more persons . . . and in the course of, and as a result of, such travel, engaged in conduct that caused, attempted to cause, and would be reasonably be expected to cause John Doe #1 and Jane Doe #1 substantial emotional distress."

11

(SI ¶ 65).   In addition to alleging the statutory elements of interstate stalking, including travel in interstate or foreign commerce, the Superseding Indictment makes McMahon aware of the approximate time and place of the alleged offense.   The charging language therefore withstands a motion to dismiss.   See Alfonso, 143 F.3d at 776.

McMahon also moves to dismiss on the basis that there is no factual allegation that the Victims knew about his actions and therefore could not have suffered emotional distress. (Mot. at 7.)   This argument is without merit.   First, as already explained, the government is not required to describe all of its evidence against the defendant in the indictment.   See, e.g., United States v. Cooper, No. 17-CR-296 (PKC), 2020 WL 2307646, at *3 (E.D.N.Y., 2020) (denying motion to dismiss where "the arguments in support of [the defendants'] claim reveal that the true nature of [d]efendants' objections are not the sufficiency of the allegations, but rather the sufficiency of the factual and evidentiary support that the government will likely use" to prove the offense); United States v. Lubienecki, No. 20-CR-77A, 2020 WL 7248323, at *3 (W.D.N.Y. Oct. 20, 2020), report and recommendation adopted, No. 20-CR-77-A, 2020 WL 7239872 (W.D.N.Y. Dec. 9, 2020) ("There is no requirement that factual evidence of the government's case be set forth in the indictment.   That is a matter of proof to be developed at the trial.") (denying motion to dismiss interstate stalking case under 18 U.S.C. § 2261A where indictment recited only the time, place, and statutory elements, without details about the course of conduct)).   McMahon's motion to dismiss is actually an impermissible challenge to the sufficiency of the government's evidence. See United States v. Sampson, 898 F.3d 270, 279-80 (2d Cir. 2018) (explaining that there is no "analogue for summary judgment" in federal criminal procedure, and therefore "although a judge may dismiss a civil complaint pretrial for insufficient evidence, a judge generally cannot do the same for a federal criminal indictment.").   The Superseding Indictment alleges that McMahon

12

(and his co-defendants) caused or attempted to cause substantial emotional distress through their conduct, and that is all that is required prior to trial.

Second, the statute is not limited to situations where a victim is in fact caused substantial emotional distress.  The statute is violated if the defendant "causes, **attempts to cause or would be reasonably expected to cause** substantial emotional distress."  18 U.S.C. § 2261A(1)(B) (emphasis added).  Accordingly, even if the Victims were entirely unaware of McMahon and his co-defendants' conduct, the government may convict them by proving that the defendants were attempting, or reasonably expected, to cause substantial emotional distress. Setting aside that no such factual showing is necessary, the Superseding Indictment alleges numerous facts that would permit a jury to conclude that McMahon and his co-conspirators were attempting to cause such distress.   As noted above, the Superseding Indictment alleges, among other things, that the conspirators dragged an elderly relative across the globe to deliver threats to the Victims, surveilled the Victims to locate their unlisted residence, tacked threatening notes to their residence, and sent threatening videos to the Victims.   McMahon himself knew about the elderly relative's travel, conducted surveillance as part of it, knew that a goal of the conspiracy was to coerce the Victims to travel back to the PRC, and personally proposed that they "harass" the Victims.   These allegations are, at minimum, consistent with attempting to cause substantial emotional distress.

### 2.   The Defendant Can Be Convicted of Count Four Through Aiding and Abetting and *Pinkerton* Liability

Even if McMahon's contention that he personally did not travel in interstate commerce were accurate and an appropriate basis to move to dismiss, his motion to dismiss Count Four should also be denied because he can be convicted of that offense based on aiding and abetting liability and the Pinkerton doctrine.

Under 18 U.S.C. § 2, a defendant is "punishable as a principle" where he "aids, abets, counsels, commands, induces or procures [a crime's] commission." Aiding and abetting is not a separate offense and is generally assumed to be an alternative theory of liability in every indictment that charges a substantive offense. See, e.g., United States v. Mucciante, 21 F.3d 1228, 1234 (2d Cir. 1994) (explaining that "an aiding and abetting charge is arguably implicit in every indictment" and that an aiding and abetting instruction may be given "even if the indictment does not expressly charge a violation of 18 U.S.C. § 2"). Neither the statute nor the phrase aiding and abetting need be included in the indictment. Id.; see also United States v. Nyenekor, 784 Fed. App'x 810, 816 (2d Cir. 2019) ("The well established rule in this and other circuits is that a defendant may be indicted for the commission of a substantive crime and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor."). Nonetheless, the Superseding Indictment does provide McMahon with notice that he may be found guilty based on aiding and abetting others, citing Section 2 and stating that the substantive stalking offense was committed "together with others." See United States v. Hill, 279 Fed. App'x 90, 95 (2d Cir. 2008) (holding that the phrase "together with others" and citation to 18 U.S.C. § 2 "were sufficient to put [the defendant] on notice that he faced such liability.").

The substantive interstate stalking charge in Count Four is also adequate because McMahon participated in a criminal conspiracy, and the stalking offense was a reasonably foreseeable result of that conspiracy. Pursuant to Pinkerton v. United States, 328 U.S. 640, 646 (1946), "a defendant who does not directly commit a substantive offense may nevertheless be liable if the commission of the offense by a co-conspirator in furtherance of the conspiracy was reasonably foreseeable to the defendant as a consequence of their criminal agreement." United States v. Parkes, 497 F.3d 220, 232 (2d Cir. 2007), cert. denied, 552 U.S. 1220 (2008) (internal

quotations and citations omitted).  <u>Pinkerton</u> "permits a jury to find a defendant guilty on a substantive count without specific evidence that he committed the act charged."  <u>United States v. Miley</u>, 513 F.2d 1191, 1208 (2d Cir. 1975) (Friendly, J.), <u>cert. denied</u>, 423 U.S. 842 (1975).  A defendant does not need to commit the substantive violation himself to be found guilty of the substantive offense, provided he participated in the conspiracy that brought about that offense, and it was reasonably foreseeable.  <u>See</u> <u>United States v. Rodriguez</u>, 320 F. App'x 105, 107 (2d Cir. 2009) (affirming conviction for murder through use of a firearm where defendant participated in narcotics conspiracy involving armed robberies that led to firearm-related murder by others).

The inclusion of a reference to 18 U.S.C. § 2 and a related conspiracy in the Superseding Indictment are both independently sufficient to support the substantive interstate stalking charge.  But the Superseding Indictment goes further, and provides detailed information relevant to the offense that supports both charging theories.  As discussed in detail above, the Superseding Indictment alleges that McMahon and his co-conspirators agreed to surveil, investigative, and locate the Victims so that they could bring John Doe #2 to the United States from the PRC to coerce their repatriation.  It alleges that this was part of a larger conspiracy to compel the Victims' return to the PRC, which included other acts of harassment.  It alleges that McMahon aided others involved in the scheme in a number of ways, including conducting surveillance and obtaining records about the Victims, all in aid of their ultimately successful effort to locate the Victims.  And it alleges facts showing that multiple conspirators traveled in both interstate (New Jersey to New York) and foreign (the PRC to the United States) commerce.  Accordingly, the facts as alleged demonstrate that McMahon aided and abetted an interstate and international stalking scheme, and that he engaged in a criminal conspiracy whose foreseeable consequence was a federal stalking crime.  Accordingly, even if the Superseding Indictment were

15

deficiently pled with respect to McMahon's direct liability for Count Four, the fact that McMahon is alleged to have aided and abetted and conspired with others is enough to satisfy the pleading requirements.

      C.    <u>The Indictment Sufficiently Alleges That McMahon Acted as An Agent of a Foreign Government Without Prior Notice to the Attorney General (Count Two)</u>

      McMahon argues that Count Two should be dismissed because "it does not include any factual allegation that Mr. McMahon 'agree[d] to operate within the United States subject to the direction or control of a foreign government or official[.]'"  (Mot. at 9 (alterations in original).) This argument fails for the same reasons as McMahon's motion to dismiss Count Four: all the elements of the offense are included in the indictment, and the defendant is subject to both aiding and abetting and <u>Pinkerton</u> liability.

      1.    <u>The Superseding Indictment Alleges the Elements of a Section 951 Offense</u>

      The elements of an offense under Section 951 are (1) the defendant acted in the United States as an agent of a foreign government; (2) the defendant failed to notify the Attorney General of the United States that he would be acting in the United States as an agent of the foreign government prior to so acting; and (3) the defendant acted knowingly.  <u>See</u> 18 U.S.C. § 951; <u>United States v. Dumeisi</u>, 424 F.3d 566, 581 (7th Cir. 2005).  The Superseding Indictment alleges these elements:

> In or about and between September 2016 and December 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant[] . . . MICHAEL MCMAHON . . . together with others, did knowingly act in the United States as agents of a foreign government, to wit: the PRC government, without prior notification to the Attorney General of the United States, as required by law.

(SI ¶ 60).  McMahon's contention that the Superseding Indictment "does not include any factual allegation" about his actions as an agent of the PRC government is a sufficiency of evidence claim

that is not appropriate for a motion to dismiss.  Because the charge tracks the language of the statute and notifies McMahon that he is charged with acting as an agent of the PRC government during a set period of time, the charge states an offense and his motion should be denied.

        To the extent McMahon's argument could be construed to be a claim that the government failed to plead "direction or control" as an element of the offense, this too must fail. The "direction or control" language is merely the definition of the term "agent of a foreign government."  See 18 U.S.C. § 951(d).  Indictments do not need to include the definitions of statutory terms that are otherwise adequately pled.  See, e.g., United States v. Pugh, No. 15-CR-116 (NGG), 2015 WL 9450598, at *6 (E.D.N.Y. Dec. 21, 2015) (holding that indictment need not allege "direction and control" in case charging provision of "personnel" as material support to foreign terrorist organization, because "Section 2339B(h) further defines 'personnel' and is not an affirmative defense or an essential element of the offense of providing material support to an FTO."); United States v. Augustine, No. 18-CR-393 (SJ), 2021 WL 1381060, at *2 (E.D.N.Y. Apr. 13, 2021) (same).  Similarly, McMahon's repeated references to legal conduct is also misplaced: the defendant may claim as an affirmative defendant that he was engaged in a "legal commercial transaction," but it is not an element of the offense.  See United States v. Rafiekian, 991 F.3d 529, 544 (4th Cir. 2021) (concluding that "the 'legal commercial transaction' exception [to Section 951] provides for an affirmative defense—which must be raised first, if at all, by a defendant—rather than an essential element of the offense").

        Even if McMahon were permitted to challenge the sufficiency of the evidence at this stage, his claim must fail.  The indictment alleges, among other things, that McMahon was directed to engage in conduct by several PRC officials, including co-defendants Tu Lan and Hu Ji. The indictment alleges that McMahon then took several actions, including surveillance, obtaining

government database records, and trying to harass the Victims, that were consistent with those directions.  The indictment also alleges that McMahon knew facts—including that the Victims were wanted by the PRC government and had red notices issued against them—which would allow a rational jury to conclude that McMahon knew he was operating on behalf of PRC officials.

>2.  The Defendant Can Be Convicted of Count Two Through Aiding and Abetting and *Pinkerton* Liability

Similar to the substantive stalking charge, McMahon can also be convicted of the substantive 951 offense in Count Two if a jury concludes he aided and abetted his co-defendants, or conspired with others and the offense was a reasonably foreseeable result of that conspiracy. Although not legally required, the Superseding Indictment identifies the aiding and abetting statute and includes language ("together with others") that puts McMahon on notice that the government may pursue an aiding and abetting theory of liability at trial.  See Hill, 279 Fed. App'x at 95.  The Superseding Indictment also alleges that McMahon participated in a criminal conspiracy to act as an unlawful foreign agent.  Accordingly, McMahon may also be convicted, pursuant to Pinkerton, if a jury concludes that McMahon participated in a conspiracy and the 951 offense was reasonably foreseeable.

Although sufficiency is not an appropriate basis for McMahon's motion to dismiss, the Superseding Indictment also includes several factual allegations supporting these theories of liability.  McMahon is alleged to have met and communicated with his co-conspirators on several occasions about surveilling the Victims, knew that his surveillance was part of a larger scheme to bring the Victims' elderly relative from the PRC to the United States to coerce their return to the PRC, knew that the Victims were wanted by the PRC government, and took a number of steps such as conducting surveillance and obtaining sensitive personal records to help bring the scheme to fruition.  A reasonable jury could conclude that McMahon either aided and abetted others

18

acting as PRC agents in the United States, or conspired with those individuals in a manner that made it reasonably foreseeable that one or more of them would be operating as an illegal PRC agent.

     D.    <u>The Indictment Sufficiently Alleges That McMahon Engaged in a Conspiracy to Stalk the Victims and Act as an Unlawful PRC Agent</u>

McMahon argues that the conspiracy counts (Counts One and Three) should be dismissed because the Superseding Indictment only alleges that McMahon performed legal surveillance activities and otherwise "fails to set forth any factual assertion that Mr. McMahon knowingly and willfully entered into an agreement with another to commit an offense against the United States." (Mot. at 10-11.) These claims are meritless.

The Superseding Indictment does not allege that McMahon agreed to conduct legal surveillance activities. It alleges that McMahon agreed to act as an unregistered foreign agent and to engage in interstate stalking. (See SI ¶¶ 57, 65 ("McMahon . . . did knowingly and willfully conspire to act in the United States as agents of a foreign government . . . contrary to Title 18, United States Code, Section 951(a)" and "McMahon . . . did knowingly and willfully conspire to travel in interstate and foreign commerce, with the intent to harass and intimidate, and place under surveillance with intent to harass and intimidate. . . contrary to Title 18, United States Code, Section 2261A(1)(B)")). An indictment that alleges an agreement to violate another law is sufficient. See United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002) (citation omitted) ("[I]n an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy.")

The caselaw cited by McMahon stands only for the proposition that one cannot be charged with conspiracy to commit an offense for which the object of the conspiracy is not a crime.

In <u>United States v. Courtois</u>, No. S81 CR. 53-CSH, 1981 WL 1639, at *18 (S.D.N.Y. June 5, 1981), the court dismissed the conspiracy to commit mail fraud count because it found that the indictment was devoid of any allegation of economic loss, actual or contemplated, such that the indictment had not properly alleged mail fraud. Here, for the reasons stated above, the government has properly alleged that McMahon entered a conspiracy to commit the unlawful acts of acting as an unregistered foreign agent and interstate stalking.

In any event, as with the substantive counts, the Superseding Indictment goes substantially beyond providing the legally sufficient statement of elements, time and place, and alleges facts that show the existence of a criminal conspiracy between McMahon and others. The Indictment alleges specific communications between and among McMahon, his co-defendants and other conspirators, and alleges that McMahon and others engaged in conduct based on those communications. (See, e.g., SI ¶¶ 21, 26-37, 31-33 (alleging that McMahon communicates with PRC Official Hu Ji; McMahon engages in surveillance; Zhu Feng requests database information from McMahon; and PRC official Tu Lan and Zhu Feng discuss communications with McMahon). Thus, the Superseding Indictment alleges an agreement in fact to commit the criminal offenses, and overt acts to carry out the conspiracy.

## II.  The Superseding Indictment Adequately Alleges Venue for Each Offense

### A.  Legal Standard

The U.S. Constitution provides that a defendant shall be tried in the place where the crimes were committed. U.S. Const. art. III, § 2, cl. 3; amend. VI. Rule 18 of the Federal Rules of Criminal Procedure, which codifies this right, states that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. The Government bears the burden of proving venue by a preponderance of the evidence. <u>United States v. Naranjo</u>, 14 F.3d 145, 146 (2d Cir. 1994). To

satisfy this burden, the Government "need only allege that criminal conduct occurred within the venue, 'even if phrased broadly and without a specific address or other information.'" United States v. Ohle, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010) (citing United States v. Bronson, No. 05 Cr. 714 (NGG), 2007 WL 2455138, at *4 (E.D.N.Y. Aug. 23, 2007)). At the motion to dismiss stage, "the allegations of the indictment must be taken as true." United States v. Bellomo, 263 F. Supp. 2d 561, 579 (E.D.N.Y. 2003).

To determine the proper venue for a particular crime, courts first look to the crime's relevant criminal statute. See United States v. Rasheed, No. 18-3479, --- F.3d ---, 2020 WL 6930781, at *3 (2d Cir. Nov. 25, 2020). Absent an express statutory provision to the contrary, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." United States v. Royer, 549 F.3d 886, 893 (2d Cir. 2008) (internal quotations omitted); 18 U.S.C. § 3237(a). The defendant's physical presence in the district during the charged conduct is unnecessary for proper venue. See United States v. Rommy, 506 F.3d 108, 120 (2d Cir. 2007). While a defendant does not need to have "actual knowledge that an overt act will occur in a particular district to support venue at that location," id. at 123, "a defendant must have been able to reasonably . . . foresee[] that part of the offense would take place in the district," United States v. Kirk Tang Yuk, 885 F.3d 57, 70 (2d Cir. 2018) (alteration in original).

B.   The Superseding Indictment Alleges Venue with Regard to McMahon

McMahon's motion to dismiss for lack of venue contains the same defects as his other arguments, and should be denied for largely the same reasons.

The Superseding Indictment alleges that each of the crimes for which McMahon was charged occurred "within the Eastern District of New York and elsewhere," thus providing

21

notice of proper venue.  See Bellomo, 263 F. Supp. 2d at 579 (denying motion to dismiss where indictment alleged offenses occurring "within the Eastern District of New York and elsewhere"). This language alone is sufficient to defeat the defendant's motion.  See, e.g., United States v. Lange, No. 10-CR-968 (DLI), 2012 WL 511448, at *1 (E.D.N.Y. Feb. 15, 2012) (denying motion to dismiss because "the government sustained its burden" by alleging "within the Eastern District of New York and elsewhere" in each count).

        McMahon's venue argument otherwise amounts to another insufficiency of evidence claim.  But the sufficiency of the evidence as to venue "is not appropriately addressed on a pretrial motion to dismiss an indictment" unless "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense."  Alfonso, 143 F.3d at 777.  No such full proffer of evidence has been made in this complex case, which is expected to include testimony from witnesses and a number of records that will be relevant to venue.

        Even if McMahon were permitted to challenge the venue evidence at this time, his claim would fail.  McMahon argues that "there is no allegation that Mr. McMahon ever entered the Eastern District of New York" and that "every single fact alleged in the Superseding Indictment relating to Mr. McMahon occurred in the District of New Jersey."  (Mot. at 15-16).  But venue is not determined so narrowly.  A defendant does not need to physically enter a district for venue to attach, nor does the offense conduct that creates venue have to relate directly to a particular defendant.  So long as any acts in furtherance of the charged offense occurs in the district, and the acts are reasonably foreseeable to the defendant, venue will lie.  See, e.g., United States v. Lange, 834 F.3d 58, 69 (2d Cir. 2016) (explaining that "a defendant need not intentionally or knowingly cause an act in furtherance of a charged offense to occur in the district to establish venue" and that

22

"it is enough that it is foreseeable [to the defendant] that such an act would occur in the district and that act does in fact occur") (internal quotations and citations omitted, brackets in original). Venue will also attach if a defendant aids and abets another's crime that occurred in some part in the relevant district.   See United States v. Khalupsky, 5 F.4th 279, 292 (2d Cir. 2021) (affirming venue in Eastern District of New York as to defendant because "once proper venue is established in the EDNY for the scheme through [co-defendant], it is enough that [the other defendant] aided and abetted the scheme of securities fraud writ large; we do[ ] not require that a defendant aid and abet the specific criminal activity occurring within the district of venue").

Notwithstanding that a sufficiency challenge is inappropriate, the Superseding Indictment alleges several facts sufficient to support venue over the offenses.   For example, after the April 2017 surveillance and harassment campaign that McMahon participated in, it is alleged that co-defendant Tu Lan traveled from New Jersey to New York, "departed from John F. Kennedy International Airport, in Queens, New York" and then flew back to the PRC, where she continued to direct actions against the Victims, including directions that were given to McMahon. (SI ¶¶ 29-31).   Two co-conspirators traveled from New York and stayed at a hotel in New Jersey while they met with PRC official Tu Lan.   (SI ¶ 25).   Another two conspirators resided in the Eastern District of New York and traveled to New Jersey to post the threatening messages at the Victims' residence.   The Superseding Indictment also alleges that four of the defendants resided in the Eastern District of New York during parts or all of the relevant time period, including co-defendant Zhu Feng, with whom McMahon regularly communicated as part of the conspiracy. (SI ¶¶ 4-5, 8-9).   While these facts are far from the extent of the government's proof of venue, they are more than sufficient at this stage of the case.

23

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court

deny the defendant's motion to dismiss the Superseding Indictment.

Dated:        Brooklyn, New York
              January 21, 2022


                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York

                            By:         /s/ Craig R. Heeren
                                        Craig R Heeren
                                        J. Matthew Haggans
                                        Ellen H. Sise
                                        Assistant U.S. Attorneys
                                        (718) 254-7000

                                        Scott A. Claffee
                                        Trial Attorney
                                        National Security Division
                                        Special Assistant U.S. Attorney