## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>   v.<br><br>HI JI,<br>LI MINJUN,<br>TU LAN,<br>ZHU FENG,<br>also known as "Johnny Zhu,"<br>KUANG ZEBIN,<br>also known as "Vincent Kuang,"<br>MICHAEL MCMAHON,<br>ZHAI YONGQIANG,<br>ZHENG CONGYING and<br>ZHU YONG,<br>also known as "Jason Zhu,<br><br>         Defendants. | Case No. 1:21-cr-00265 (PKC) (S-1)<br><br>*Filed electronically* |

---

**DEFENDANT MICHAEL MCMAHON'S MEMORANDUM OF LAW IN RESPONSE TO THE GOVERNMENT'S MOTIONS *IN LIMINE* TO ADMIT CERTAIN EVIDENCE AND PRECLUDE CERTAIN EVIDENCE AND ARGUMENTS AT TRIAL**

---

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
*Attorneys for defendant Michael McMahon*

*On the brief:*
Lawrence S. Lustberg, Esq.
Genna A. Conti, Esq.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.    DEFENDANTS' STATEMENTS AS PARTY-OPPONENT ADMISSIONS
      WHEN OFFERED BY THE GOVERNMENT. ..................................................... 3

      A.    Mr. McMahon Does Not Object to the Admissibility of the Trial Defendants' Pre-
            Arrest Statements. ................................................................................... 3

      B.    Mr. McMahon Does Not Contest the Admissibility of The Trial Defendants' Post-
            Arrest Statements. ................................................................................... 4

      C.    It Is Premature for the Court to Preclude Defendants from Admitting Additional
            Portions of Their Statements. ................................................................. 5

II.   MR. MCMAHON DOES NOT OBJECT TO THE ADMISSIBILITY OF ZHU
      FENG'S ALLEGED FASE STATEMENTS AS ACTS IN FURTHERANCE OF
      THE CONSPIRACY AND AS PROOF RELEVANT TO AIDING-AND-
      ABETTING LIABILITY ....................................................................................... 8

III.  MR. MCMAHON DOES NOT OPPOSE THAT STATEMENTS ABOUT AND
      BETWEEN CONSPIRATORS, AND BY CONSPIRATORS TO OTHERS
      ABOUT THE CONSPIRACY, ARE ADMISSIBLE CO-CONSPIRATOR
      STATEMENTS ...................................................................................................... 8

IV.   MR. MCMAHON TAKES NO POSITION WITH REGARD TO THE
      ADMISSIBILITY OF PROFFER-PROTECTED STATEMENTS BY ZHU
      YONG, SHOULD ZHU VIOLATE THE TERMS OF HIS PROFFER
      AGREEMENT. ...................................................................................................... 9

V.    MR. MCMAHON LACKS STANDING TO OBJECT TO THE
      ADMISSIBILITY OF THREATS AND COMMANDS MADE TO THE
      VICTIMS AS NON-HEARSAY AS HE WAS NOT INVOLVED IN ANY
      SUCH THREATS. ................................................................................................. 9

VI.   EVIDENCE OF ADDITIONAL BAD ACTS BY DEFENDANT MCMAHON
      AS INTRINSIC EVIDENCE OF CRIMES ......................................................... 11

      A.    McMahon's Solicitation and Procurement of Information from Law Enforcement
            and NJMVC Databases ......................................................................... 11

            1.    Mr. McMahon's Solicitation and Procurement of Information
                  From Law Enforcement and NJMVC Databases was Legal. ................... 12

2.      Even if, *Arguendo*, Mr. McMahon's Solicitation and Procurement of Information from Law Enforcement and NJMVC Databases was Not Obtained Legally, Whether It Was Lawful Is Not Relevant Under Federal Rule of Evidence 401, and is Thus, Inadmissible Under Federal Rule of Evidence 402. ....................................................... 17

3.      Whether Mr. McMahon's Solicitation and Procurement of Information from NJMVC Databases and Law Enforcement Was Lawful Would Require a Mini-trial on This Issue and Should Therefore Be Excluded Under Federal Rule of Evidence 403. ............... 19

B.      McMahon's Use of Personal Bank Accounts and Failure to Report Money Received from Co-Conspirators as Income Is Not Admissible. .......................... 20

VII.    EVIDENCE OR ARGUMENT SUGGESTING SELECTIVE PROSECUTION OR IMPUGING OR OTHERWISE CHALLENGING THE GOVERNMENT'S CONDUCT OF THE INVESTIGATION. ....................................................... 24

VIII.   EVIDENCE OR ARGUMENT REGARDING PRIOR GOOD ACTS OR COMPLIANCE OF THE LAW .................................................................... 25

IX.    EVIDENCE OR ARGUMENT ABOUT THE EXISTENCE OF ABSENCE OF CLASSIFIED INFORMATION AS IRRELEVANT ....................................... 26

X.     USE OF AGENT REPORTS TO IMPEACH WITNESSES THAT WERE INTERVIEWED. ............................................................................................ 26

XI.    PUBLIC DISCLOSURE OF PERSONAL IDENTIFIABLE INFORMATION OF THE VICTIMS AND THEIR FAMILY MEMBERS AND CERTAIN OTHER EXHIBITS CONTAINING HIGHLY SENSITIVE INFORMATION ABOUT THE VICTIMS. ................................................................................................ 27

XII.   EVIDENCE OR ARGUMENT RELATING TO DEFENSES THAT REQUIRED PRIOR NOTICE UNDER RULES 12.1, 12.2 AND 12.3 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE. ....................................................... 28

CONCLUSION ................................................................................................... 29

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barrett v. Orange County Human Rights Comm'n*,
    194 F.3d 341 (2d Cir. 1999)..................................................................5

*Bermudez v. City of New York*,
    No. 15-CV-3240 (KAM)(RLM), 2019 WL 136633 (E.D.N.Y. Jan. 8, 2019).........................18

*Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*,
    715 F.2d 631 (7th Cir. 2013) ...............................................................16

*Carlton v. Union Pacific R. Co.*,
    No. 8:05CV293, 2007 WL 475350 (D. Neb. Feb. 9, 2007).....................................20

*Glass v. Phila. Elec. Co.*,
    34 F.3d 188 (3d Cir. 1994)..................................................................20

*McLeod v. Llano*,
    No. 17-CV-6062 (ARR) (RLM), 2021 WL 1669732 (E.D.N.Y. Apr. 28, 2021) ..................19

*Nardino v. Credit Control, LLC*,
    No. CV 17-03772, 2019 WL 2053708 (E.D.N.Y. Mar. 26, 2019) .............................5

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group*,
    937 F. Supp. 276 (S.D.N.Y. 1996) ..........................................................4

*Nationwide Mut. Ins. Co. v. Mortensen*,
    No. 00-CV-1180, 2010 WL 5071046 (D. Conn. Dec. 7, 2010)...............................4

*RVC Floor Décor, Ltd. v. Floor & Décor Outlets of Am., Inc.*,
    No. 18-CV-6449, 2023 WL 2403258 (E.D.N.Y. Mar. 7, 2023)...............................5

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) .............................................................15

*Smith v. City of New York*,
    388 F. Supp. 2d 179 (S.D.N.Y. 2005).......................................................6

*Smith v. Duncan*,
    411 F.3d 340 (2d Cir. 2005)................................................................6

*Trejos Hermanos Sucesores S.A. v. Verizon Commc'ns Inc.*,
    No. 21-08928 (JLR), 2023 WL 24237 (S.D.N.Y. Jan. 3, 2023)............................15

*United States v. Abdelaziz*,
    -- F.4th ----, 2023 WL 3335870 (1st Cir. 2023)......................................................10

*United States v. Al-Moayad*,
    545 F.3d 139 (2d Cir. 2008)......................................................................................19

*United States v. Alegria*,
    No. S 09 Cr. 0450 (RWS), 1991 WL 238223 (S.D.N.Y. Nov. 6, 1991) ..............10

*United States v. Ashburn*,
    76 F. Supp. 3d 401 (E.D.N.Y. 2014) .........................................................................9

*United States v. Detrich*,
    865 F.2d 17 (2d Cir. 1988)..........................................................................................6

*United States v. Freeman*,
    No. 3:19-CR-00220 (VAB), 2022 WL 1156325 (D. Conn. Apr. 18, 2022)..........21

*United States v. Gotti*,
    457 F. Supp. 2d 395 (S.D.N.Y. 2006)........................................................................6

*United States v. James*,
    607 F. Supp. 3d 246 (E.D.N.Y. 2022) .....................................................................25

*United States v. Jimenez*,
    513 F.3d 62 (3d Cir. 2008)........................................................................................20

*United States v. Johnson*,
    507 F.3d 793 (2d Cir. 2007).......................................................................................7

*United States v. King*,
    879 F.2d 137 (4th Cir. 1989) ....................................................................................23

*United States v. Kurland*,
    No. 20-CR-306 (S-1) (NGG), 2022 WL 2669897 (E.D.N.Y. Jul. 11, 2022) .........19

*United States v. Marshall*,
    75 F.3d 1097 (7th Cir. 1996) ....................................................................................23

*United States v. Napout*,
    No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017)..................18

*United States v. Ranochak*,
    No. 17-cr-73 (JD), 2022 WL 4298568 (N.D. Ind. Sept. 19, 2022).........................23

*United States v. Ruffin*,
    575 F.2d 346 (2d Cir. 1978)......................................................................................22

*United States v. Stern*,
    No. 11–CR–301, 2012 WL 2250139 (E.D. Wis. Jun. 15, 2012) .............................19

*United States v. Tahlil Mohamed*,
   No. 18-cr-603, 2022 WL 15493545 (E.D.N.Y. Oct. 26, 2022) ................................................7

*United States v. Taubman*,
   297 F.3d 161 (2d Cir. 2002) ...............................................................................................6

*United States v. Umoren*,
   No. 2:16-cr-00374-APG-NJK, 2021 WL 5761771 (D. Nev. Dec. 3, 2021) ..........................23

*United States v. Wallington*,
   889 F.2d 573 (5th Cir. 1989) .............................................................................................16

*United States v. Walsh*,
   No. 15-cr-91 (ADS), 2016 WL 6603187 (E.D.N.Y. Nov. 7, 2016), *aff'd*, 774
   F. App'x 706 (2d Cir. 2019) ...............................................................................................15

*United States v. Williams*,
   930 F.3d 44 (2d Cir. 2019) ..................................................................................................7

*Wechsler v. Hunt Health Systems, Ltd.*,
   381 F. Supp. 2d 135 (S.D.N.Y. 2003) ..................................................................................4

**Statutes**

5 U.S.C. § 552a ........................................................................................................................15

5 U.S.C. § 552a(b) ...................................................................................................................16

18 U.S.C. § 2 .............................................................................................................................2

18 U.S.C. § 371 .........................................................................................................................2

18 U.S.C. § 951(a) .....................................................................................................................2

18 U.S.C. § 1512(c)(2) ..............................................................................................................2

18 U.S.C. § 1512(k) ...................................................................................................................2

18 U.S.C. § 1905 ......................................................................................................................16

18 U.S.C. § 2261A(1)(B) ...........................................................................................................2

18 U.S.C. § 2721(b)(3)(A) .......................................................................................................13

18 U.S.C. § 2725(3) .............................................................................................................13, 14

18 U.S.C. § 3551 .......................................................................................................................2

N.J.S.A. 39:2-3.3 .....................................................................................................................14

N.J.S.A. 39:2-3.4(c) ...................................................................................14

**Rules**

Fed. R. Crim. P. 12.1 .................................................................................28

Fed. R. Crim. P. 12.2 .................................................................................28

Fed. R. Crim. P. 12.3 .................................................................................28

Fed. R. Evid. 106 ........................................................................................7

Fed. R. Evid. 401 ..................................................................................12, 17

Fed. R. Evid. 402 ..................................................................................17, 18

Fed. R. Evid. 403 ..............................................................................12, 19, 20

Fed. R. Evid. 404(b) ....................................................................11, 18, 20, 23

Fed. R. Evid. 404(b)(2) ...............................................................................23

Fed. R. Evid. 801(c) .....................................................................................6

Fed. R. Evid. 801(d)(2)(E) ............................................................................8

Fed. R. Evid. 803(3) .....................................................................................6

## PRELIMINARY STATEMENT

Defendant Michael McMahon is "a 53-year-old U.S. citizen" and was "a licensed private detective in New Jersey." ECF No. 77 (Superseding Indictment), ¶ 6. Mr. McMahon worked as a private investigator since August 5, 2005, following his retirement from the New York City Police Department (NYPD) in 2003. ECF No. 146-7 (Certification of Defendant Michael McMahon), ¶ 1. Specifically, Mr. McMahon had worked for over 14 years as an NYPD police officer, a detective in the Bronx Narcotics Division, and a Sergeant at the 43rd Precinct in the Bronx. *Id.*, ¶ 2. In that capacity, Mr. McMahon conducted or participated in hundreds of investigations, in cases involving drugs, homicide, burglary, and weapons possession, among others. *Id.* As a private investigator, before this prosecution, Mr. McMahon conducted surveillance, performed searches through various databases to obtain information such as personal identifying information, motor vehicle records, criminal records, asset information, and marriage data; he also conducted witness interviews. *Id.*, ¶ 1.

In September, 2016, Zhu Yong (also known as "Jason Zhu") "together with [Co-Conspirator #1] and others, hired [Mr. McMahon] to investigate and surveil John Doe #1," ECF No. 77, ¶ 18. The co-conspirators concealed the true purpose of Mr. McMahon's investigation from him, repeatedly informing Mr. McMahon that the subject was being investigated because he had embezzled assets from a private Chinese company. *See* ECF No. 146.2, Ex. Nos. 1, 2, 3, 4. Between October of 2016 and April of 2017, Mr. McMahon performed certain lawful investigative services in connection with the matter, which was largely focused on asset recovery; specifically, Mr. McMahon "conduct[ed] surveillance of John Doe #1" over the course of five days – on each of which Mr. McMahon informed local police of his surveillance activities. ECF No. 77, ¶ 19. He also obtained banking and other "information regarding John Doe #1 and his family." *Id.*

1

On October 28, 2020, over three years after the last day on which Mr. McMahon performed investigative services with regard to John Doe #1, Mr. McMahon was arrested and charged in a two-count criminal complaint with Conspiracy to Act as an Agent of a Foreign Government Without Prior Notification to the Attorney General in violation of 18 U.S.C. § 371 and with Conspiracy to Engage in Interstate Stalking in violation of 18 U.S.C. § 371. *See* ECF No. 1.  On May 15, 2021, an indictment was returned charging defendants Hu Ji, Li Minjun, Zhu Feng (also known as "Johnny Zhu"), Michael McMahon, Zheng Congying, and Zhu Yong (also known as "Jason Zhu") with Conspiracy to Act as an Agent of a Foreign Government Without Prior Notification to the Attorney General in violation of 18 U.S.C. § 371 and 18 U.S.C. § 3551 (Count I) and with Conspiracy to Engage in Interstate Stalking in violation of 18 U.S.C. § 371 and 18 U.S.C. § 3551 (Count II).  *See* ECF No. 54.  Later, on July 21, 2021, the Government obtained a Superseding Indictment charging defendants Hu Ji, Li Minjun, Tu Lan, Zhu Feng (also known as "Johnny Zhu"), Kuang Zebin (also known as "Vincent Kuang"), Michael McMahon, Zhai Yongqiang, Zheng Conguing and Zhu Yong (also known as "Jason Zhu") with Conspiracy to Act as an Agent of a Foreign Government Without Prior Notification to the Attorney General in violation of 18 U.S.C. § 371 and 18 U.S.C. § 3551 (Count I), Acting as an Agent of a Foreign Government Without Prior Notification to the Attorney General in violation of 18 U.S.C. § 951(a), 18 U.S.C. § 2, and 18 U.S.C. § 3551 (Count II), Conspiracy to Engage in Interstate Stalking in violation of 18 U.S.C. § 371 and 18 U.S.C. § 3551 (Count III), and Stalking in violation of 18 U.S.C. § 2261A(1)(B), 18 U.S.C. § 2, and 18 U.S.C. § 3551 (Count IV).  *See* ECF No. 77.[1]

---

[1]The Superseding Indictment also charges defendants Tu Lan and Zhu Feng (also known as "Johnny Zhu") with Obstruction of Justice in violation of 18 U.S.C. § 1512(c)(2), 18 U.S.C. § 2, and 18 U.S.C. § 3551 (Count V) and Conspiracy to Obstruct Justice in violation of 18 U.S.C. § 1512(k) and 18 U.S.C. § 3551 (Count VI).  Mr. McMahon is not charged in these counts.

Mr. McMahon has entered not guilty pleas to all charges against him.  He filed motions, seeking dismissal and for discovery and an evidentiary hearing regarding the Government's motive in indicting Mr. McMahon, which were denied by the Court.  *See* ECF Nos. 123, 163. Accordingly, trial has been scheduled in this matter, with jury selection on May 22, 2023, a final pretrial hearing on May 30, 2023, and trial to begin on May 31, 2023.  Pursuant to the briefing schedule set by the Court, on May 1, 2023, the Government filed motions *in limine* to admit certain evidence and preclude certain evidence and arguments at trial, *see* ECF No. 196 (hereinafter "Gov't Br.").  Mr. McMahon respectfully submits this response to the Government's *in limine* motions.[2]

## ARGUMENT

### I.    DEFENDANTS' STATEMENTS AS PARTY-OPPONENT ADMISSIONS WHEN OFFERED BY THE GOVERNMENT.

The Government first "moves to admit the prior statements of the Trial Defendants if those statements are offered at trial by the government, and to preclude any additional prior statements if offered by the Trial Defendant."  Gov't Br. at 5.

#### A.    Mr. McMahon Does Not Object to the Admissibility of the Trial Defendants' Pre-Arrest Statements.

*First*, the Government moves to admit "numerous statements made by the Trial Defendants" for use "in its case-in-chief," such as, "with respect to McMahon, . . . (1) McMahon's statements sent via emails and text messages, including to, among others, Eric Gallowitz, Gregory Finning, Hu Ji, Lina Xu (also known as 'Emily Hsu' and 'Emily Xu') / Transperfect Language

---

[2] On Tuesday, May 9, 2023 at 9:40 PM, eight (8) days after *in limine* motions were due, the Government filed an additional letter seeking "to preclude cross-examination" with regard to certain topics.  *See* ECF No. 209.  Given the timing of that submission, Mr. McMahon did not have sufficient time to include his response herein, but will, following this filing, do so promptly and well in advance of the final pretrial conference scheduled for May 30, 2023.

Services, Michael Kelly, Zhu Feng, Zhu Yong, and to himself; (2) McMahon's statements in third-party records, including, among others, financial, telephone, and email records; and (3) McMahon's oral statements to conspirators and third parties, including among others, Eric Gallowitz, Jin Hongru, Lina Xu, and Michael Kelly." Gov't Br. at 5.

Mr. McMahon certainly does not, as a general matter, object to the admission of his or his co-defendants' pre-arrest statements, which Mr. McMahon believes to be consistent with his innocence. That said, the Government has not identified the specific statements it intends to seek to admit at trial, rendering the Government's motion premature. *See Nationwide Mut. Ins. Co. v. Mortensen*, No. 00-CV-1180, 2010 WL 5071046, at *3 (D. Conn. Dec. 7, 2010) (finding the plaintiff's motion *in limine* to exclude evidence premature where it did not specify which exhibits were actually irrelevant); *Wechsler v. Hunt Health Systems, Ltd.*, 381 F. Supp. 2d 135, 150-51 (S.D.N.Y. 2003) (denying motion *in limine* where the movant did "not specify any evidence that they s[ought] to preclude"); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (finding that the "motion *in limine* lacks the necessary specificity with respect to the evidence to be excluded or the purported reason for the introduction of such evidence"). Accordingly, Mr. McMahon reserves all rights to object to the admissibility of specific statements within the defendants' pre-arrest statements and, in particular, the admission of certain excerpts, as opposed to the entirety of such statements, if that is what the Government chooses to do, as it has indicated it might. *See* Section I(C), *infra*.

## B. Mr. McMahon Does Not Contest the Admissibility of The Trial Defendants' Post-Arrest Statements.

*Second*, Mr. McMahon also does not contest that "statements made by each of The Defendants to agents with the FBI following their respective arrests in this case" should be admitted at trial. Gov't Br. at 7. Mr. McMahon also does not object to the Government's proposed

4

substitutions of references to Mr. McMahon with "someone else," "private investigator," or "detective," as set forth in Exhibit 1 of the Government's brief.

### C.    It Is Premature for the Court to Preclude Defendants from Admitting Additional Portions of Their Statements.

*Third*, the Government requests that the Court "preclude the defendants from admitting other portions of their statements, either on cross-examination or in their case-in-chief, because such testimony would constitute hearsay without any exception."   Gov't Br. at 11.  Again, however, the Government's motion seeking to preclude the defendants from admitting additional portions of their statements is, once again, premature, unless and until the Government informs Mr. McMahon what portions of the defendants' statements it seeks to admit and what "other" portions it seeks to preclude.  *See supra* at 4.

Indeed, additional portions of the defendants' statements, which obviously cannot be known to Mr. McMahon until the Government informs Mr. McMahon which of the defendants' statements it seeks to admit, may be admissible at trial for a number of non-hearsay purposes; if so, it would be improper to preclude the defendants from admitting these additional portions of their statements before the Court is able to conduct a full analysis.  Thus, of course, "[s]tatements may be admissible as non-hearsay when not being offered for the truth of the matter asserted." *RVC Floor Décor, Ltd. v. Floor & Décor Outlets of Am., Inc.*, No. 18-CV-6449, 2023 WL 2403258, at *16 (E.D.N.Y. Mar. 7, 2023). And that may be the case here, depending upon the specific statement at issue; at this point, it is impossible to tell.  *See, e.g., Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 347-48 (2d Cir. 1999) (statements that were admitted for their motivation and not for the truth of the matter asserted therein were not hearsay and thus, admissible); *Nardino v. Credit Control, LLC*, No. CV 17-03772, 2019 WL 2053708, at *5 (E.D.N.Y. Mar. 26, 2019) ("[a] statement is not hearsay if it is offered for a purpose other than to

establish the truth of the matter asserted . . . [o]ne well-recognize such purpose is effect on the listener").

For example, it may be that certain parts of the defendants' statements—if not introduced by the Government—may be admissible as non-hearsay to show that Mr. McMahon did not intend to deceive law enforcement with regard to his investigative services in connection with this matter or otherwise, all of which would go to his state of mind and intent in performing the investigative services he did.  Still others—*i.e.*, co-defendant's statements—may be admissible for their effect on Mr. McMahon, as the listener, to show that he did not know that he was working as an agent of the PRC, but rather, believed he was working for a private Chinese company in connection with an embezzlement case.  Indeed, "under Federal Rule of Evidence 801(c), 'where a statement is offered as circumstantial evidence of the declarant's state of mind rather than for the truth of the matter asserted, it is not hearsay.'"  *United States v. Gotti*, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006) (quoting *Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005)); *see United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988) (finding that a statement "offered as circumstantial evidence of [the defendant's] state of mind," "did not fall within the definition given by Rule 801(c), because it was not offered to prove the truth of the matter asserted").  Additionally, "under Rule 803(3), the state of mind *exception* to the hearsay rule allows into evidence '[a] statement of the declarant's then existing state of mind . . . but not including a statement of memory or belief to prove the fact remembered or believed.'"  *Gotti*, 475 F. Supp. at 397 (quoting Fed. R. Evid. 803(3)).  "[A] determination of whether a statement falls within the state of mind exception requires a predicate finding as to whether the statement related to a then existing state of mind or to a past memory or belief offered to prove the fact remembered or believed."  *Id.* (quoting *United States v. Taubman*, 297 F.3d 161, 165 (2d Cir. 2002)).  Moreover, "[i]t is well established . . . that statements offered for their effect on the listener are non-hearsay."  *Id.* (quoting *Smith v. City of*

*New York*, 388 F. Supp. 2d 179, 182 n.2 (S.D.N.Y. 2005)).  In other words, if a statement is being offered as evidence of state of mind, it does not fall within the definition of hearsay, and is thus admissible for that purpose.  But again, of course, that depends upon the specific statements at issue and the context in which they are offered at trial, issues upon which the Government's motion sheds no light.

Moreover, although the Government seeks to preclude the defense from seeking the admissibility of other aspects of the rule of completeness, that rule, Federal Rule of Evidence 106, provides that other parts of a statement may be admitted where the failure to admit them would mislead the trier of fact.  Specifically, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at the time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." Fed. R. Evid. 106.  The rule necessitates admittance "when the statement is necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Tahlil Mohamed*, No. 18-cr-603, 2022 WL 15493545, at *2 (E.D.N.Y. Oct. 26, 2022) (citing *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007)).  Furthermore, "when an omitted statement that is otherwise hearsay is properly introduced to correct a misleading impression or place in context that portion already admitted, it is . . . admissible for a valid, non-hearsay purpose." *Id.* at *2 (citing *United States v. Williams*, 930 F.3d 44, 60 (2d Cir. 2019)) (quotations omitted).  Thus, depending on the portions of the defendants' statements that the Government seeks to admit— again, something we do not know at this point based upon the Government's motion—the remainder of the defendants' statements may be admissible to avoid misleading the trier of fact.

In sum, additional portions of the defendants' statements, which obviously cannot be known to Mr. McMahon until the Government informs Mr. McMahon which of the defendants'

statements it seeks to admit, may be admissible at trial for a number of non-hearsay purposes, and thus, the Government's motion *in limine* is premature until those statements are identified and the Court can fully and properly analyze whether to preclude additional portions of the defendants' statements.

## II. MR. MCMAHON DOES NOT OBJECT TO THE ADMISSIBILITY OF ZHU FENG'S ALLEGED FASE STATEMENTS AS ACTS IN FURTHERANCE OF THE CONSPIRACY AND AS PROOF RELEVANT TO AIDING-AND-ABETTING LIABILITY.

The Government next "moves to admit at trial certain statements made to federal law enforcement by fugitive co-defendant Zhu Feng",  Gov't Br. at 13, specifically "statements made by Zhu Feng on April 12, 2017 to law enforcement and border officials", during which Zhu Feng purportedly "made false and misleading statements to law enforcement, in particular about his knowledge of and relationship to PRC Official Tu Lan."  Gov't Br. at 14.  Mr. McMahon has no objection to admitting these statements at trial, assuming that the Government is able to meet the requirements of Federal Rule of Evidence 801(d)(2)(E), obviously something that cannot be ascertained at this point based upon the Government's motion.

## III. MR. MCMAHON DOES NOT OPPOSE THAT STATEMENTS ABOUT AND BETWEEN CONSPIRATORS, AND BY CONSPIRATORS TO OTHERS ABOUT THE CONSPIRACY, ARE ADMISSIBLE CO-CONSPIRATOR STATEMENTS.

The Government also "moves to admit at trial statements made by certain conspirators that were made during and in furtherance of the conspiracy," and "anticipates admitting (1) statements by the Trial Defendants to one or more of the other charged defendants, as well as by the Trial Defendants to unindicted co-conspirators and (2) statements among and between other co-conspirators regarding the planning, execution, flight from, and attempted concealment of their scheme."  Gov't Br. at 19.  Again, although Mr. McMahon does not object, as a general matter, to the admissibility of co-conspirator statements that satisfy the requisites of Federal Rule of Evidence 801(d)(2)(E), the Government has not yet identified any pre-marked exhibits or

otherwise specified which statements it intends to seek to admit at trial, and, until it does, Mr. McMahon reserves his right to object to such statements to the extent that they do not satisfy the Rule.

## IV. MR. MCMAHON TAKES NO POSITION WITH REGARD TO THE ADMISSIBILITY OF PROFFER-PROTECTED STATEMENTS BY ZHU YONG, SHOULD ZHU VIOLATE THE TERMS OF HIS PROFFER AGREEMENT.

The Government next "notifies the Court and defendant Zhu Yong that it intends to introduce at trial statements made by Zhu during his November 18, 2020 proffer meeting with the government, should an appropriate triggering event occur under the terms of the governing proffer agreement." Gov't Br. at 26. Leaving aside the inherently speculative, and therefore premature nature of this request, Mr. McMahon takes no position with regard to this motion, which does not implicate Mr. McMahon, and, if it is admitted, will seek an appropriate limiting instruction instructing the jury that it should not be considered against him. *Cf. United States v. Ashburn*, 76 F. Supp. 3d 401, 428 (E.D.N.Y. 2014) ("[U]nder Supreme Court and Second Circuit precedent, the introduction of the redacted statements—accompanied by the appropriate limiting instruction—does not violate [a defendant's] Sixth Amendment right to confrontation. . . . Accordingly, the court will instruct the jury that these statements may only be considered against [the co-defendant].").

## V. MR. MCMAHON LACKS STANDING TO OBJECT TO THE ADMISSIBILITY OF THREATS AND COMMANDS MADE TO THE VICTIMS AS NON-HEARSAY AS HE WAS NOT INVOLVED IN ANY SUCH THREATS.

The Government also "intends to admit several pieces of evidence that reflect threats or commands that were made to the Victims as part of the scheme to coerce their return to the PRC"— purportedly that John Doe-1 will testify both "that he and his family were confronted on several occasions, between 2011 and 2012, by a former classmate and former PRC official, who directed John Doe-1 to return to the PRC to face charges against him in order to avoid further harm to

himself or his family" and "that he received a letter from a PRC-based family member in or around 2011, in which the author of the letter conveyed that PRC government officials directed the writer to convey to John Doe-1 that he needed to publicly apologize for negative statements about the PRC government or else officials would come to the United States and bring him back to the PRC." Gov't Br. at 28-29.  The Government has once again failed to specify the alleged "threats or commands" made to the victims that it seeks to admit as non-hearsay.  That said, based upon both the allegations of the Indictment and the discovery thus far provided, it does not appear that Mr. McMahon is currently alleged to have made, or even have known about, any such statements.  *Id.* at 28.  Accordingly, those statements should not be held against Mr. McMahon and he will, accordingly, request an appropriate jury instruction directing the jury not to consider them against him; otherwise, he reserves the right to object to their admissibility, depending upon whether the Government establishes the requisite evidentiary foundation.  *See United States v. Alegria*, No. S 09 Cr. 0450 (RWS), 1991 WL 238223, at \*8-9 (S.D.N.Y. Nov. 6, 1991) (reversing and dismissing the defendant's conspiracy conviction where the evidence was "insufficient to establish membership in the broader conspiracy" at issue, given that "[f]or three weeks, the jury heard evidence of the large auto-theft ring alleged in Count 1 of the Indictment" but that the defendant had only "committed one or more . . . minor acts that allegedly brought him within the scope of the conspiracy alleged");  *see also United States v. Abdelaziz*, -- F.4th ----, 2023 WL 3335870, at \*2, 26 (1st Cir. 2023) (vacating the defendants' conspiracy convictions where "the evidence was insufficient to prove that the[] defendants agreed to join the broader charged conspiracy" to corruptly influence university employees where introduction "of powerful evidence related to other parents' wrongdoing in which the[] defendants played no part[] creat[ed] an unacceptable risk that the jury convicted the defendants based on others' conduct rather than their own").

10

## VI.    EVIDENCE OF ADDITIONAL BAD ACTS BY DEFENDANT MCMAHON AS INTRINSIC EVIDENCE OF CRIMES.

The Government seeks "to admit as direct evidence, or alternatively, other bad acts under Federal Rule of Evidence 404(b)" that (1) "McMahon solicited and obtained information about the Victims from law enforcement agents and the New Jersey Motor Vehicle Commission ("NJMVC") database in violation of relevant privacy laws"; (2) "McMahon funneled funds received from his co-conspirators into personal bank accounts, including a joint account with his wife and son's account—not the business account for McMahon Investigative Group, his private investigator company"; and (3) "McMahon failed to report monies received for his private investigator work done at the behest of his co-conspirators as income earned on his tax returns he filed for 2016 and 2017" on the basis that "this evidence is inextricably intertwined with the charged crimes and as such is admissible as direct evidence of the charged crimes", or, alternatively, is "admissible as McMahon's 'other crimes, wrongs or acts' under Federal Rule of Evidence 404(b) to show McMahon's intent, lack of mistake and knowledge." Gov't Br. at 30-31.

### A.    McMahon's Solicitation and Procurement of Information from Law Enforcement and NJMVC Databases

The Government moves to introduce evidence "that on April 6, 2017, McMahon searched the NJMVC database for John Doe-1's license plate" and thereafter "sent a photograph to Zhu Feng depicting the owner and associated address for the vehicle and related how the car was financed." Gov't Br. at 33.  The Government also seeks to introduce "evidence that in late October 2016, defendant McMahon provided the social security numbers, dates of birth and driver's license numbers of John Doe-1 and Jane Doe-1 to then-Drug Enforcement Administration Agent Gregory Finning in an effort to obtain information about the Victims from Homeland Security Investigation databases pertaining to their travel in and out of the United States" and that "McMahon did in fact obtain these records and passed them to co-conspirators working for the PRC government." *Id.*

11

Mr. McMahon does not dispute that he ran John Doe-1's license plate through the NJMVC Customer Abstract Information Retrieval ("NJ CAIR") database on April 6, 2017 and sent that information to Johnny Zhu, or that in October 2016, Mr. McMahon provided and obtained information regarding John Doe-1 and Jane Doe-1 to Gregory Finning, nor does Mr. McMahon object to introduction of that information at trial.  Mr. McMahon does, however, object to the introduction of any testimony or evidence regarding whether Mr. McMahon's "solicitation and procurement of information from law enforcement and NJMVC Databases" was illegal, should the Government seek to so demonstrate—as is not clear from the Government's motion.  That said, while the facts of what Mr. McMahon did are not disputed, and he does not object to their admission, he does object to the admission of evidence that those actions were unlawful, both because that is simply untrue—his actions were lawful—and thus without basis and, alternatively, whether Mr. McMahon acted unlawfully or not is irrelevant, within the meaning of Federal Rules of Evidence 401 and 403, including because it would occasion a mini-trial on the issue, resulting in delay of trial, waste of judicial resources, and confusion to the jury.  *See* Fed. R. Evid. 403.

### 1.  Mr. McMahon's Solicitation and Procurement of Information From Law Enforcement and NJMVC Databases was Legal.

*First*, Mr. McMahon's use of the NJMVC database and procurement of information from law enforcement was completely lawful.  Mr. McMahon, a licensed private investigator in the State of New Jersey, had an account with the NJMVC Customer Abstract Information Retrieval ("NJ CAIR") in order to run vehicle license plates while conducting surveillance in the course of his business.[3]  As stated *supra* at 12, Mr. McMahon does not dispute that during the investigation

---

[3] The Government also asserts that "[e]vidence at trial will also show that defendant McMahon had previously written in an application to obtain access to the NJMVC database that his reason for doing so was 'to assist Law Firms regarding investigation.'"  Gov't Br. at 33.  Mr. McMahon does not dispute this; however, the Government fails to note that Mr. McMahon's initial application to NJ CAIR in March of 2015, clearly states that his primary reason for obtaining access to the database was "to assist law firms with providing and verifying clients information

at issue, he ran the license plate for John Doe-1's vehicle through NJ CAIR on April 6, 2017, and texted the findings to Zhu Feng.

Mr. McMahon also does not dispute, as the Government asserts, that Mr. McMahon "must abide by applicable federal and New Jersey privacy laws, including Title 18, United States Code, Section 2721," while using NJ CAIR; indeed, Mr. McMahon did abide by applicable federal and New Jersey privacy laws. The Driver's Privacy Protection Act, 18 U.S.C. § 2721(b)(3)(A) provides, in pertinent part, that "[p]ersonal information," defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information," *see* 18 U.S.C. § 2725(3), "about any individual obtained by the department in connection with a motor vehicle record . . . may be disclosed . . . [f]or use in the normal course of

---

*also to assist my business with criminal and fraud investigations*" and identified his business activity as "private investigator". *See* Certification of Lawrence S. Lustberg ("Lustberg Cert."), Ex. 1 at 2 (emphasis added). Indeed, Mr. McMahon's Certification of Applicant in connection with that application indicated that he intended to use the NJ CAIR database for the following permissible uses: (1) "For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only: 1. to verify the accuracy of personal information submitted by the individual to the business or its agents, employees or contractors; and 2. if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursing legal remedies against, or recovering on a debt or security interest against the individual"; (2) "For use in connection with any civil, criminal, administrative or arbitral proceedings in any federal, state or local court or agency or before any self-regulatory body, including service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a federal, state or local court"; and (3) "For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individual." *See id.* at 3. Mr. McMahon's application was approved on March 31, 2015. *See id.* at 1. Moreover, since Mr. McMahon's initial application was approved, Mr. McMahon has been subject to routine audits by NJ CAIR, during which Mr. McMahon has informed NJ CAIR of his use of the database for private investigation services performed for individuals and entities other than law firms. For example, in 2019, Mr. McMahon informed NJ CAIR in response to a routine audit that he was using the database in connection with a fraud investigation for an insurance company; NJ CAIR permitted Mr. McMahon to continue to use the database. *See* Lustberg Cert., Ex. 2.

business by a legitimate business or its agents, employees, or contractors" in order "to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors[.]" *See also* N.J.S.A. 39:2-3.4(c) ("personal information," defined in N.J.S.A. 39:2-3.3 as "information that identifies an individual, including an individual's photograph; social security number; driver identification number; name; address other than the five-digit zip code; telephone number; and medical or disability information," may be disclosed, in pertinent part, "[f]or use in the normal course of business by a legitimate business or its agents, employees or contractors . . . to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors").

Here, Jason Zhu, through Emily Hsu, provided Mr. McMahon with the social security number and address for John Doe-1 on October 5, 2016. *See* Lustberg Cert., Ex. 3. On April 6, 2017, Mr. McMahon simply ran John Doe-1's license plate through NJ CAIR, "in the normal course of business" and through his "legitimate business," McMahon Investigative Services, in order "to verify the accuracy of the personal information" already in the possession of Jason Zhu and Emily Hsu. *See* 18 U.S.C. § 2725(3); N.J.S.A. 39:2-3.4(c).[4] Accordingly, Mr. McMahon's use of NJ CAIR was completely permissible, and, thus, the Government should not be permitted to introduce information regarding the illegality of such conduct. Of course, the Government alleges that Mr. McMahon was acting unlawfully, based upon the charges in the Superseding Indictment. If the Government bears its burden of showing that is so, beyond a reasonable doubt, and that Mr. McMahon had the required criminal intent in doing so, then he will be convicted, and

---

[4] It bears noting that Mr. McMahon could have used a number of other databases, such as TLO.com, TRACERS.com, and irbsearch.com, to conduct a search of John Doe-1's license plate, which would not have subjected Mr. McMahon to routine audits or otherwise alerted the NJ MVC to Mr. McMahon's activities; thus, the fact that Mr. McMahon chose to run John Doe-1's license plate through NJ CAIR, in and of itself, shows that Mr. McMahon was not searching John Doe-1's license plate for any illegal purpose.

may, as well, have violated these statutory and regulatory provisions. But if that is the case, then this allegation is redundant of the criminal charges here at issue, taking Mr. McMahon's actions outside the scope of 404(b), as they are not other acts at all. Of course, and again, Mr. McMahon does not object to the Government showing what he did—his only objection is to testimony about the *lawfulness* of those actions—the type of testimony not usually permitted in any event. *See Trejos Hermanos Sucesores S.A. v. Verizon Commc'ns Inc.*, No. 21-08928 (JLR), 2023 WL 24237, at *1 (S.D.N.Y. Jan. 3, 2023) ("Neither expert nor fact testimony may 'provide legal opinions, legal conclusions, or interpret legal terms; those roles fall solely within the province of the court.'" (quoting *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48-49 (S.D.N.Y. 2016))); *see also United States v. Walsh*, No. 15-cr-91 (ADS), 2016 WL 6603187, at *11 (E.D.N.Y. Nov. 7, 2016) ("A witness offers an opinion on a legal conclusion when he or she attempts to define the defendant's conduct as illegal or compare the defendant's conduct to statutory language."), *aff'd*, 774 F. App'x 706 (2d Cir. 2019).

Nor did Mr. McMahon unlawfully procure information from Homeland Security Investigation databases. The Government asserts, and Mr. McMahon does not dispute, that "in late October 2016, defendant McMahon provided the social security numbers, dates of birth and driver's license numbers of John Doe-1 and Jane Doe-1 to then-Drug Enforcement Administration Agent Gregory Finning in an effort to obtain information about the Victims from Homeland Security Investigation databases pertaining to their travel in and out of the United States" and that Mr. McMahon "did in fact obtain these records and passed them to" others. Gov't Br. at 33. However, the statutes cited by the Government in support of its argument do not apply to Mr. McMahon. *See* Gov't Br. at 33-34 n.12 (quoting 5 U.S.C. § 552a[5] ("No agency shall disclose any

---

[5] 5 U.S.C. § 552a was mis-cited by the Government as 18 U.S.C. § 552a.

record which is contained in a system of records by any means of communications to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains [subject to certain exceptions that are not relevant]."); 18 U.S.C. § 1905 ("[A]n officer or employee of the United States or of any department or agency thereof, . . . publishes, divulges, discloses, or makes known in any manner to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation . . . . shall be fined under this title, or imprisoned not more than one year, or both.")).   Rather, those statutes are targeted at employees of the agencies.  *See Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.2d 631, 650 (7th Cir. 2013) ("[A]ll ***federal officials*** handling personal information . . . are 'bound by the Privacy Act not to disclose any personal information and to take certain precautions to keep personal information confidential.'" (emphasis added) (citing 5 U.S.C. § 552a(b))); *United States v. Wallington*, 889 F.2d 573, 578 (5th Cir. 1989) ("[W]e hold that section 1905 prohibits the disclosure of information by a ***federal employee*** only if the information is confidential, *at least* in the sense that it is the official policy of the agency in question (or is otherwise required by statute or regulation) that the information *not* be released." (first emphasis added)).  Even under the Government's theory, then, Mr. McMahon did not violate any laws in obtaining information from the Homeland Security Investigation database.

In sum, Mr. McMahon did not violate any laws or statutes in connection with his "solicitation and procurement from law enforcement and NJMVC databases"; evidence that he somehow did so should thus be excluded at trial though, again, Mr. McMahon does no object to the introduction of evidence of the acts themselves.

       **2.**       **Even if, *Arguendo*, Mr. McMahon's Solicitation and Procurement of Information from Law Enforcement and NJMVC Databases was Not Obtained Legally, Whether It Was Lawful Is Not Relevant Under Federal Rule of Evidence 401, and is Thus, Inadmissible Under Federal Rule of Evidence 402.**

*Second*, even if, *arguendo*, Mr. McMahon's solicitation and procurement of information from law enforcement and NJMVC databases was not obtained legally, it is not relevant under Fed. R. Evid. 401, as it does not, in any way, bear upon whether the Government can prove the elements of the offenses that Mr. McMahon has been charged with.  In support of its argument, the Government contends that "McMahon's work to obtain data about the Victims through extralegal channels is sufficient to meet the low threshold of relevance set forth in Federal Rule of Evidence 401" because "[h]is acts obtaining information about the Victims at the instruction of Zhu Feng, in violation of federal law, are direct evidence of elements of all the charged crimes and show that he acted at the behest of Zhu Feng (who was working for the PRC government) and Hu Ji (who was a PRC government official)", and thus, "the Court should admit evidence that defendant McMahon accessed and acquired information from law enforcement and NJMVC databases in furtherance of the charged conspiracies and at the behest of his co-conspirators who worked for the Chinese government."  Gov't Br. at 34.

It is well established that "[e]vidence is relevant" and thus, admissible, "if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," Fed. R. Evid. 401, and that irrelevant evidence, is, of course, inadmissible, Fed. R. Evid. 402.  Here, again, Mr. McMahon does not dispute that his actions in obtaining information from the NJMVC databases and from law enforcement satisfy this standard; that is, although he obviously disputes the Government's conclusion, he does not contest that "the Court should admit evidence that defendant McMahon accessed and acquired information from law enforcement and NJMVC databases in furtherance of the charged

17

conspiracies and at the behest of his co-conspirators who worked for the Chinese government." Gov't Br. at 34. But whether those actions were themselves done "thorough extralegal channels" or were "in violation of federal law," is legally irrelevant; he is obviously not charged with such offenses and whether or not his actions violated some other federal statute or state regulation simply does not tend to prove any element of the offenses which Mr. McMahon has been charged and should not be permitted. *See, e.g., Bermudez v. City of New York*, No. 15-CV-3240 (KAM)(RLM), 2019 WL 136633, at \*5 (E.D.N.Y. Jan. 8, 2019) (granting defendant's motion *in limine* to exclude evidence pursuant to Rule 402, where the evidence was "not relevant to the ultimate issue" in the litigation); *United States v. Napout*, No. 15-CR-252 (PKC), 2017 WL 6375729, at \*9 (E.D.N.Y. Dec. 12, 2017) ("Although a fact need not be directly probative of an element of offense charged, the fact must be 'logically related, either directly or indirectly through an inferential chain of proof, to at least one of the formal elements of the charges made or defenses raised in the case.'" (citations omitted)).

Even more significantly, since the evidence does not relate to any of the essential elements of the offenses that Mr. McMahon has been charged with, the Government's sole purpose in seeking to show that Mr. McMahon's actions violated some other statute would be to show that he is willing to break the law. But this is precisely the type of "propensity" evidence that is specifically excluded under Federal Rule of Evidence 404(b), which expressly prohibits the use of "[e]vidence of any other crime, wrong, or act to . . . prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." That "evidence," really a legal determination, should be excluded. *See supra* at 15.

### 3. Whether Mr. McMahon's Solicitation and Procurement of Information from NJMVC Databases and Law Enforcement Was Lawful Would Require a Mini-trial on This Issue and Should Therefore Be Excluded Under Federal Rule of Evidence 403.

*Third*, to allow testimony on whether Mr. McMahon's actions were lawful should be excluded under that provision of Federal Rule of Evidence 403 which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "In applying Rule 403, [the Court] 'must make a conscientious assessment of whether' one of the enumerated dangers 'substantially outweighs probative value.'" *McLeod v. Llano*, No. 17-CV-6062 (ARR) (RLM), 2021 WL 1669732, at *2 (E.D.N.Y. Apr. 28, 2021) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 160 (2d Cir. 2008)).

Here, allowing the parties to adduce evidence of whether Mr. McMahon's actions— themselves admissible—violated federal or state law or regulations would result in a mini-trial on that subject, presumably through expert legal testimony (though none has yet been proffered on the issue) of the sort that is frowned upon by the Court and which would only serve to confuse the issues and waste judicial resources, all with regard to facts that have no bearing on Mr. McMahon's guilt of the charged offenses. Indeed, the lawfulness of the actions at issue—though those actions themselves may be proven—is neither logically nor legally germane to the charges against Mr. McMahon and would therefore require the kinds of mini-trial against which Rule 403 counsels. *See United States v. Kurland*, No. 20-CR-306 (S-1) (NGG), 2022 WL 2669897, at *11 (E.D.N.Y. Jul. 11, 2022) ("Although sorting out the validity of [certain] allegations may sometimes be necessary, doing so here would require a mini-trial on issues entirely unrelated to the charges that [defendant] faces, and the court finds that this kind of distraction outweighs the marginal probative value it would provide."); *see also United States v. Stern*, No. 11–CR–301, 2012 WL 2250139, at

19

*5 (E.D. Wis. Jun. 15, 2012) (finding that reputation evidence was "collateral to any issue in the case and would require a mini-trial that would only mislead and confuse the jury"); *United States v. Jimenez*, 513 F.3d 62, 76 (3d Cir. 2008) (finding that the "marginal relevance and the risk of delay and confusion created by a mini-trial to explain the evidence" supported the district court's ruling); *Carlton v. Union Pacific R. Co.*, No. 8:05CV293, 2007 WL 475350, at *4 (D. Neb. Feb. 9, 2007) ("[T]he court excludes [certain] evidence because its limited probative value is substantially outweighed by the unnecessary waste of time required to have a mini-trial on whether the[] altercations were similar to the alleged altercation."); *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 200 (3d Cir. 1994) (evidence was properly excluded under Rule 403 because potential for mini-trial over collateral issues may have confused the issues and caused substantial unfair prejudice). For this reason too, evidence regarding the purported illegality of Mr. McMahon's solicitation and procurement of information from the NJMVC database and from law enforcement should be excluded from evidence in the forthcoming trial of this matter.

### B. McMahon's Use of Personal Bank Accounts and Failure to Report Money Received from Co-Conspirators as Income Is Not Admissible.

The Government "also seeks to introduce evidence that in December 2016 and April 2017, instead of directing funds received for his surveillance of and inquiries into the Victims into the business bank accounts for McMahon Investigative Group, McMahon routed over $13,000 from Chinese official Li Feng and co-conspirators Zhu Feng and others into personal bank accounts for him and his wife as well as a bank account held in the name of his son," as well as evidence that "McMahon did not report the over $13,000 received for his work surveilling the Victims as income in 2016 and 2017. . . as direct evidence, or alternatively Rule 404(b) evidence, that McMahon knew that the proceeds from Zhu Feng and other co-conspirators were illegal." Gov't Br. at 35. The Government reasons that "[t]his Court should admit evidence that McMahon diverted funds received in connection with his surveillance of the Victims into personal accounts, rather than his

private investigator business account, as evidence that McMahon knew that his investigative activities were on behalf of individuals working for the PRC government and intended to illegally further the harassment and intimidation of the Victims" and that Mr. McMahon's "failure to report such income on his tax returns similarly shows his knowledge." *Id.* at 36. However, neither Mr. McMahon's deposits into his personal bank accounts or his failure to report his income on his tax returns shows the knowledge that the Government purports to show that he was working for the PRC government.

*First*, with regard to the bank deposits, the facts, which the Government well knows, show that McMahon deposited money into his personal bank account in this matter only after Eric Yan attempted to deposit money via transfer into the McMahon Investigative Group account, but was unable to do so, as the wire would not successfully go through. *See* Lustberg Cert., Ex. 4. Moreover—and this is critical—Mr. McMahon here proffers that this was not the only instance in which he deposited money received for investigative services into his personal bank account, disproving the Government's theory that such deposits somehow show Mr. McMahon's knowledge that he was working for the PRC government. Thus, by way of example, on October 17, 2016 and March 23, 2017, Mr. McMahon deposited checks from the Law Office of Brain J. Neary in connection with investigative services that he performed in connection with two separate legal matters. *See* Lustberg Cert., Exs. 5, 6. And, similar to the instant matter, on September 22, 2017, money was wired from a client into Mr. McMahon's personal account as "payment to investigator for legal dispute." *See* Lustberg Cert., Ex. 7. Therefore, the fact that Mr. McMahon deposited funds received from his private investigative services in this matter—whether appropriate or not (and given that he was, indisputably, the sole proprietor of McMahon Investigative Services, it was likely totally appropriate)—simply does not show that he knew he was doing anything wrong, let alone that he was working for the PRC. *See United States v.*

*Freeman*, No. 3:19-CR-00220 (VAB), 2022 WL 1156325, at \*15 (D. Conn. Apr. 18, 2022) (finding that a defendant did not "act[] with the requisite willful and knowing intent where he was 'merely careless in keeping his books,' 'made errors of judgment,' or 'failed to hire a competent bookkeeper or accountant' (citing *United States v. Ruffin*, 575 F.2d 346, 354 (2d Cir. 1978))).

*Second*, the fact that Mr. McMahon did not report his earnings from this matter on his taxes likewise cannot be used to show that Mr. McMahon knew that he was working for the PRC government. Indeed, there are numerous reasons why an individual may fail to report income on his or her taxes; here, those actions seem to be due to inadvertence or carelessness. Thus, in response to the Government's in limine motion, counsel has investigated Mr. McMahon's finances and discovered that Mr. McMahon's general practice in completing his taxes in 2016 and 2017 was to provide any W-2 and 1099s received as a result of his privative investigative services to his accountant, given that the majority of Mr. McMahon's clients were law firms, for which he would receive W-2s or 1099s each year. However, it appears that Mr. McMahon inadvertently failed to report income generated from private investigative services performed, as here, for a number of private individuals, where Mr. McMahon did not receive W-2s and 1099s. *See* Lustberg Cert., Exs. 7, 8, 9. Indeed, Mr. McMahon was not even aware that he had not included these matters in his tax returns for 2016 and 2017, and, upon receiving the Government's brief, promptly contacted his accountant to amend his tax returns to report the earnings from this case and others that he inadvertently failed to report. In any event, though, thus viewed, and in light of the fact that he failed to report certain other—as here, minimal—income for which there were not W-2s or 1099s issued, Mr. McMahon's failure to report the income here simply does not show that Mr. McMahon understood that he was engaged in criminal activity; it shows only that Mr. McMahon was careless in gathering the information that should have been included in his taxes. Thus viewed, his actions do not demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, absence

22

of mistake, or lack of accident," as is permitted by Fed. R. Evid. 404(b)(2).  *See United States v. Marshall*, 75 F.3d 1097, 1109 (7th Cir. 1996) (finding that admitting the prosecutor's cross-examination "[w]ith regard to the under-reporting of taxes" was in error, as "the prosecutor offered no proof that [the defendant] intentionally misled the IRS or that she had been criminally prosecuted by the IRS"; thus, "[t]he prosecutor's inquiry served only to infer that [the defendant] could have been negligent or careless in filing her tax returns").  Therefore, evidence regarding Mr. McMahon's failure to report the income generated in this matter should be excluded from evidence at trial.

Moreover, with regard to both the bank deposits and the tax returns, the probative value of the evidence, as discussed above, is far outweighed by the potential unfair prejudice inherent in presenting the impression of Mr. McMahon as a law-breaker.  As above, this is indeed the kind if propensity evidence that is barred by Rule 404(b).  *See United States v. Ranochak*, No. 17-cr-73 (JD), 2022 WL 4298568, at *10 (N.D. Ind. Sept. 19, 2022) ("The Court agrees with Defendants that the evidence of false tax returns or failure to file taxes is propensity evidence and therefore forbidden by Rule 404(b)."); *United States v. King*, 879 F.2d 137, 139 (4th Cir. 1989) (finding that "failure to report income on a tax return [was] so tangentially related to the crime charged that it d[id] not tend to show motive, opportunity, intent, or any other permissible purpose" and that the evidence was "valuable only to impeach [the defendant's] character and show that he [was] willing to lie").  And it would, again, require a mini-trial with regard to Mr. McMahon's banking practices on the one hand, and tax accounting, on the other, none of which is justified by the minimal probative value of the proffered evidence when viewed in its factual context.  *See United States v. Umoren*, No. 2:16-cr-00374-APG-NJK, 2021 WL 5761771, at *2 (D. Nev. Dec. 3, 2021) (barring evidence of the witness's false tax filings at trial, finding that "[s]uch evidence has very little, if any, probative value to th[e] case and would likely confuse the jury").  In sum, Mr. McMahon's

23

use of personal bank accounts and failure to report money received from alleged co-conspirators as income does not evidence Mr. McMahon's knowledge that he was working for the PRC, as it would if this had been the only case in which Mr. McMahon deposited money into his personal bank accounts or failed to report income.  It should, in fairness and under the Rules of Evidence, not be admitted at trial.

## VII.    EVIDENCE OR ARGUMENT SUGGESTING SELECTIVE PROSECUTION OR IMPUGING OR OTHERWISE CHALLENGING THE GOVERNMENT'S CONDUCT OF THE INVESTIGATION.

The Government argues that the defendants "should be precluded from introducing evidence or making arguments before the jury that seek to impugn or otherwise put at issue the government's conduct or motive in its prosecution of this matter", including "the Department of Justice's 'China Initiative,' the prosecution of other cases involving private investigators, or the prosecution of other cases related to the PRC government."  Gov't Br. at 37.  The Government seeks to preclude this evidence because "[s]uch evidence is irrelevant to the Defendants' innocence or guilt and presents a substantial risk of misleading the jury or inviting jury nullification."  *Id.*

At this time, Mr. McMahon does not intend to introduce evidence at trial that Mr. McMahon was "improperly targeted," Gov't Br. at 38, unless additional evidence not yet known comes to light of vindictiveness or actual animus attributable to the United States Attorney's Office for the Eastern District of New York, within the meaning of this Court's prior Opinion on this issue.  *See* ECF No. 163, at 10-18.  Nor does Mr. McMahon intend to introduce evidence at trial regarding the "China Initiative," unless it is first discussed by one of the Government's witnesses. If that happens, or if evidence comes to light of improper motive on behalf of the Government, Mr. McMahon will raise it with the Court and counsel prior to introducing the evidence at trial. Certainly, Mr. McMahon does not intend to introduce irrelevant or inappropriate evidence.

24

## VIII. EVIDENCE OR ARGUMENT REGARDING PRIOR GOOD ACTS OR COMPLIANCE OF THE LAW.

The Government "moves to preclude the Trial Defendants from introducing evidence or making arguments regarding prior good acts or compliance with the law," specifically, "to preclude McMahon from eliciting testimony or offering evidence regarding other instances in which he engaged in legal activities as a private investigator." Gov't Br. at 40-41. Mr. McMahon does not intend to introduce evidence that he, as a private investigator, "abided by the law" in the past, as that is precisely the type of "good acts" evidence prohibited in this Circuit. *See* Gov't Br. at 41 (citing cases). However, by so conceding Mr. McMahon does not hereby waive his right to introduce certain evidence that would undermine the underlying theory of the Government's prosecution, whether that can be characterized as good acts or others, as he is permitted to do. *See United States v. James*, 607 F. Supp. 3d 246, 257 (E.D.N.Y. 2022) ("[E]vidence of a defendant's prior 'good acts' may be relevant . . . where such 'good acts' 'would undermine the underlying theory of a criminal prosecution.'" (quoting *United States v. Balboa*, No. 12-CR-0196, 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013))). For example, Mr. McMahon may seek to introduce evidence that he has never had any relationship—before, during or after the facts alleged here—with the PRC, and that his investigative actions in this case, including his actions in reporting his activities to law enforcement,[6] as he did here, were consistent with his usual practices.

---

[6] The fact that Mr. McMahon contacted multiple law enforcement officials in the course of his investigation *in this matter* is a critical one, as it undermines the Government's theory that Mr. McMahon knew that he was working as an agent of the PRC, and is a fact that the Government itself intends to raise by including Mr. Finning and records custodians from the Millburn and Warren Police Departments on its witness list. *See* ECF No. 188. In any event, those actions are not prior good acts; they are part of the facts of this case.

IX.    **EVIDENCE OR ARGUMENT ABOUT THE EXISTENCE OF ABSENCE OF CLASSIFIED INFORMATION AS IRRELEVANT.**

The Government "moves to preclude any inquiry or argument about classified information during the trial outside the scope of" the Classified Information Protection Act ("CIPA") on the basis that if the defendants sought "to elicit classified information at trial, they were required to comply with [CIPA]." Gov't Br. at 42. The Government further notes that "[p]ublicly disclosing the existence or absence of particular classified information, even in general terms, would tend to reveal classified facts, and therefore create a risk to national security" and that "any answers or argument about the general absence or existence of classified information would be irrelevant and inadmissible." *Id.*

Mr. McMahon is not in possession of any classified material related to this matter, and does not anticipate seeking to elicit any classified information at trial. Should Mr. McMahon question witnesses in a way that relates to CIPA-protected information, that would be completely inadvertent, as Mr. McMahon is unaware of the scope of the CIPA-protected information related to this matter, since he has not been involved in any of the CIPA-related hearings in this matter.

X.    **USE OF AGENT REPORTS TO IMPEACH WITNESSES THAT WERE INTERVIEWED.**

The Government also "requests that the Court preclude the defense from introducing the contents of" "summaries of witness interviews prepared by law enforcement" produced to the defense in discovery "to impeach such witnesses during cross-examination, publishing the contents of the reports to the jury, or otherwise suggesting to the jury that the reports are statements of the witnesses who did not write or adopt them." Gov't Br. at 44-45.

Mr. McMahon is aware of the proper use of agent reports, and will use them appropriately manner at trial. That is, if, as the Government represents, various investigative "reports summarizing investigators' interviews with government witnesses . . . were not reviewed or

adopted by any of the government witnesses," Gov't Br. at 46, then Mr. McMahon understands that he is permitted "to ask a witness whether he or she made a statement that is reflected" within the report, but that he "may not publish or introduce the report's contents as a prior inconsistent statement", *id.* at 46 n.19. Mr. McMahon also understands that the agent reports "constitute prior statements of the agents or officers who prepared the report if they are called as a witness to testify regard the subject matter contained in the report" and that Mr. McMahon may use the reports to question the author with regard to any such statements. *Id.* at 46 n.18. He has no intention of going beyond these rules, of which he is well aware.

## XI. PUBLIC DISCLOSURE OF PERSONAL IDENTIFIABLE INFORMATION OF THE VICTIMS AND THEIR FAMILY MEMBERS AND CERTAIN OTHER EXHIBITS CONTAINING HIGHLY SENSITIVE INFORMATION ABOUT THE VICTIMS.

The Government "requests that the Court limit public disclosure of personal identifying information (PII) of the Victims and their family members including names, addresses, and telephone numbers during trial," as well as "certain exhibits that contain highly sensitive information about the victims in the case, including the Red Notices the PRC government disseminated against John Doe-1 and Jane Doe-1 in 2012 and 2014, and correspondence and other documents from John Doe-1's family members who currently reside in the PRC, including materials associated with John Doe-1's mother, father and sister." Gov't Br. at 47.

Mr. McMahon does not object to certain, sensitive information being withheld from public disclosure in this matter; indeed, he has respected those interests in his own prior filings in this matter, which have been redacted or filed under seal where appropriate. Mr. McMahon and his counsel have full confidence that the Court will safeguard the interests of the public in determining

what information should be limited from public disclosure.[7]  Although Mr. McMahon does not know at this time the full scope of the information that the Government will contend constitutes highly sensitive information, Mr. McMahon agrees that he will not seek to disseminate that information that is deemed highly sensitive to the public, as he has not throughout.  Rather, Mr. McMahon requests only that the jury be allowed to consider all evidence that it is entitled to consider in rendering its verdict in this matter, as the Government concedes must occur.  *See* Gov't Br. at 48 n.20 ("The government is also not requesting that Victim PII and other sensitive Victim information be masked from the Court, court personnel, the Trial Defendants and their counsel, or the members of the jury.).

## XII.    EVIDENCE OR ARGUMENT RELATING TO DEFENSES THAT REQUIRED PRIOR NOTICE UNDER RULES 12.1, 12.2 AND 12.3 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.

The Government "requests that the Court preclude the Trial Defendants from introducing evidence or argument relating to alibi, mental defect, or public authority affirmative defenses." Gov't Br. at 50.  Mr. McMahon does not intend, unless the proofs are very different than he understands them to be now, to assert the defenses addressed by Federal Rule of Criminal Procedure 12.1, 12.2 or 12.3 at trial, and so this motion is not applicable to him.

---

[7] Mr. McMahon does, however, reserve the right to object to any inappropriate designation of highly sensitive information, including, as just one possible example, Red Notices that were publicly available.  *See* Gov't Br. at 47.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. McMahon respectfully requests that the Court grant the relief requested herein.

Respectfully submitted,
**GIBBONS P.C.**
*Attorneys for Defendant*
*Michael McMahon*

By:     <u>/s/ Lawrence S. Lustberg</u>
        Lawrence S. Lustberg, Esq.

Date: May 15, 2023